IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

TERSHAUD SAVORYEA ROSE,

         Plaintiff;

v.

CENTRA HEALTH, INC., *et al.*,

         Defendants.

Case No. 6:17-cv-12

Hon. Norman K. Moon

## DEFENDANT CENTRA HEALTH, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS

Elizabeth Guilbert Perrow (VSB No. 42820)
F. Elizabeth Burgin Waller (VSB No. 74726)
Justin E. Simmons (VSB No. 77319)
J. Walton Milam III (VSB No. 89406)
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
bwaller@woodsrogers.com
jsimmons@woodsrogers.com
wmilam@woodsrogers.com

*Counsel for Defendant Centra Health, Inc.*

Dated: May 15, 2017

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. LAW AND ARGUMENT .................................................................................. 1

    A. The Complaint fails to state a plausible § 1983 claim against Centra (Counts 1–4) ..... 1

        1. Counts 1 through 4 fail to allege a plausible § 1983 claim against Centra based on a policy or custom that is itself unconstitutional ...................................... 1

        2. Counts 1 through 4 fail to allege a plausible § 1983 claim against Centra based on a constitutionally deficient hiring or training policy or custom ................ 3

        3. Counts 1 through 4 fail to allege a plausible § 1983 claim against Centra based on a constitutionally deficient disciplinary policy or custom, and Rose's proposed amendment would be futile ........................................................... 5

    B. The Complaint fails to state a plausible negligent-entrustment claim against Centra (Count 12) ................................................................................................ 6

    C. The Complaint fails to state a plausible punitive-damages claim under federal law against Centra (Counts 1–4) ....................................................................... 8

    D. The Complaint fails to state a plausible punitive-damages claim under Virginia law against Centra (Counts 5–10, 12) ................................................................ 9

        1. Count 12 fails to allege a plausible punitive-damages claim under Virginia law against Centra based on the entrustment of the taser ..................................... 9

        2. To the extent that Counts 5 through 10 and 12 allege one or more plausible punitive-damages claims under Virginia law against Centra, this is the right stage of the case to reduce them to no more than $350,000, in accordance with Virginia's statutory cap on punitive damages ....................................... 10

    E. If any of Rose's claims against Tidwell are dismissed, then the corresponding claims against Centra must also be dismissed .................................................... 11

III. CONCLUSION ................................................................................................ 12

CERTIFICATE OF SERVICE ............................................................................... 13

*[#2202073-2, 106642-00076-01]*

i

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Garvin Cty. Bd. of Cty. Comm'rs*,
No. 14-cv-1337, 2016 U.S. Dist. LEXIS 128765 (W.D. Okla. Sept. 21, 2016).......................6

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*,
520 U.S. 397 (1997)..........................................................................................................3

*Boren v. Nw. Reg'l Jail Auth.*,
No. 5:13-cv-13, 2013 U.S. Dist. LEXIS 140169 (W.D. Va. Sept. 30, 2013).........................10

*Brondas v. Corizon Health, Inc.*,
No. 7:14-cv-369, 2015 U.S. Dist. LEXIS 71921 (W.D. Va. June 3, 2015).............................3

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986)........................................................................................................11

*Connick v. Thompson*,
563 U.S. 51 (2011)............................................................................................................4

*Cooper v. Dyke*,
814 F.2d 941 (4th Cir. 1987) ............................................................................................9

*Durkee v. Minor*,
841 F.3d 872 (10th Cir. 2016) ..........................................................................................5

*Green v. Ingram*,
608 S.E.2d 917 (Va. 2005)...............................................................................................10

*Little v. Dominion Transmission, Inc.*,
138 F. Supp. 3d 699 (W.D. Va. 2015) ..............................................................................6

*Nelson v. Green*,
No. 3:06-cv-70, 2014 U.S. Dist. LEXIS 4432 (W.D. Va. Jan. 14, 2014)..............................10

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985)......................................................................................................2, 4

*Paul v. Gomez*,
190 F.R.D. 402 (W.D. Va. 2000).......................................................................................10

*Roughton Pontiac Corp. v. Alston*,
372 S.E.2d 147 (Va. 1988)...............................................................................................11

*Turner v. Lotts*,
422 S.E.2d 765 (Va. 1992)................................................................................................7

*[#2202073-2, 106642-00076-01]*

*Worley v. Kia Motors Am., Inc.*,
　No. 1:01-cv-102, 2001 U.S. Dist. LEXIS 19637 (W.D. Va. Nov. 28, 2001) ......................... 10

**Statutes**

42 U.S.C. § 1983 ................................................................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1

iii

Defendant Centra Health, Inc., submits this reply memorandum in further support of its partial motion to dismiss Plaintiff Tershaud Savoryea Rose's Complaint (ECF No. 1) under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated in its opening memorandum and below, Centra requests that the Court grant this motion and dismiss with prejudice Rose's 42 U.S.C. § 1983 (Counts 1–4), negligent-entrustment (Count 12), and punitive-damages (Counts 1–10, 12) claims against Centra.

## I.  INTRODUCTION

In his opposing memorandum, Rose fails to address many of the arguments that Centra raises in support of its motion to dismiss. Indeed, he does not even respond to Centra's contentions as to his punitive-damages claims arising from the allegedly tortious conduct of two security guards—Christopher Woody and Deryle Cooper—who were allegedly involved in the underlying incident. (*Compare* Pl.'s Opp'n Mem. 13–14, ECF No. 35, *with* Centra's Opening Mem. 24–25, ECF No. 27.) As to the arguments Rose addresses, his rebuttals fail to show that the claims at issue should survive Centra's motion to dismiss.

## II.  LAW AND ARGUMENT

**A.  The Complaint fails to state a plausible § 1983 claim against Centra (Counts 1–4).**

> ***1.  Counts 1 through 4 fail to allege a plausible § 1983 claim against Centra based on a policy or custom that is itself unconstitutional.***

Rose argues that Centra's motion to dismiss his § 1983 claims fails because the Complaint "directly alleged that Centra maintain[ed] policies or customs that [were] themselves unconstitutional." (Pl.'s Opp'n Mem. 7.) As support, he relies on his allegations that Centra maintained policies or customs that "directly authorize[d]" its special conservators of the peace to "(i) unlawfully detain individuals on the public streets, (ii) apply force during the unlawful detention of individuals on the public streets, (iii) obtain criminal warrants against subjects

1

without probable cause, and (iv) collude and conspire with [Lynchburg Police Department] officers to deprive individuals of their constitutional rights."  (*Id.* (citing Compl. ¶¶ 162, 165, 246, 248, 310, 374, 376).)

Rose does not allege any facts beyond his own incident with one of Centra's special conservators of the peace, Rudolph Tidwell, to establish any policies or customs akin to those alleged in the Complaint.  For instance, Rose alleges no facts showing that Centra had a written policy authorizing special conservators of the peace to unlawfully detain persons on public streets or that a Centra policymaker made an affirmative decision directly commanding or authorizing them to engage in such conduct.  Nor does Rose allege any facts demonstrating that Centra's special conservators of the peace had a persistent-and-widespread practice of unlawfully detaining persons on public streets.  Each of the other alleged policies or customs similarly lacks factual support.

As explained in Centra's opening memorandum, Rose's encounter with Tidwell falls short of establishing that Centra maintained any of the alleged policies or customs.  (Centra's Opening Mem. 11–12.)  While *Monell v. Department of Social Services* recognized municipal liability under § 1983, it expressly limited that liability to only unconstitutional acts committed by employees or agents in accordance with official policies or customs.  436 U.S. 658, 694 (1978).  And subsequent Supreme Court decisions have made clear that a single unconstitutional act by an employee or agent is in itself not sufficient to establish the existence of such a policy or custom.  *See, e.g.*, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

*[#2202073-2, 106642-00076-01]*

Rose does not allege sufficient facts to support his conclusory allegations that Centra maintained policies or customs that were themselves unconstitutional. Counts 1 through 4 therefore fail to state a plausible § 1983 claim against Centra based on such policies or customs. *See Brondas v. Corizon Health, Inc.*, No. 7:14-cv-369, 2015 U.S. Dist. LEXIS 71921, at *12–13 (W.D. Va. June 3, 2015) (Moon, J.).

### 2. Counts 1 through 4 fail to allege a plausible § 1983 claim against Centra based on a constitutionally deficient hiring or training policy or custom.

Rose contends that he alleges enough facts to proceed on his § 1983 claims against Centra based on constitutionally deficient hiring and training policies or customs. (Pl.'s Mem. Op. 10.) In particular, he points to his allegations "(i) that Tidwell was not properly certified in the use of the taser he was issued, (ii) that he was unfamiliar with the basic operation of the taser he carried and (iii) that Tidwell, like all of Centra's security guards, was not subject to psychological or fitness for duty examinations prior to his hiring when those examinations are minimally necessary to protect the constitutional rights of those subject to use of force by Centra employees." (*Id.* at 7–8 (some capitalization omitted) (citing Compl. ¶¶ 167, 256, 248, 250, 314, 310, 374, 376, 614).)

These allegations are insufficient to establish a § 1983 claim based on either an inadequate-hiring or failure-to-train theory. As to the former, the allegations say nothing about Tidwell's background before he was hired. That deficiency alone is fatal to an inadequate-hiring claim because, as the Supreme Court has instructed, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v.*

3

*Brown*, 520 U.S. 397, 412 (1997). The utter lack of any allegations going to Tidwell's background in the Complaint precludes a reasonable inference that the obvious consequence of hiring him as a special conservator of the peace would be the deprivation of a third party's federally guaranteed rights.

With respect to a failure-to-train claim, Rose's allegations do not establish a pattern of constitutional violations similar to the one alleged here by Centra's special conservators of the peace, let alone that a Centra policymaker knew or should have known about such violations. Instead, Rose relies solely on the alleged violation of his own federally guaranteed rights by Tidwell. But a single incident cannot serve as the basis for a determination that an employee lacked sufficient training, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Tuttle*, 471 U.S. at 823–24. Rose alleges no facts showing that Centra maintained such a policy or custom here. Thus, an allegation of a single incident involving one of Centra's special conservators of the peace is not enough to establish that Centra had a policy or custom of failing to train its special conservators of the peace. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011).

But even assuming that Rose alleges sufficient facts for this Court to reasonably infer that Centra had a policy or custom of inadequately training their special conservators of the peace to use the specific model of taser issued, the Complaint fails to make an "affirmative link between the policy [or custom] and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823. Rose's claim is not that Tidwell failed to correctly operate the particular model of taser he was carrying at the time of the incident; rather, Rose's claim is that Tidwell should not have used the taser at all under the circumstances. (Compl. ¶¶ 215–223.) Rose concedes that Tidwell was trained and certified to use a more advanced model of taser than the one he used during the

4

incident. (*Id.* ¶¶ 58 & n.4, 59 & n.5.)  Therefore, Centra's alleged failure to train Tidwell to use the specific model of taser that he used against Rose could not have been the cause of Rose's alleged constitutional injury.

Because Rose does not allege sufficient facts to show that a reasonable policymaker would have concluded that the obvious consequence of hiring Tidwell would be the deprivation of a third party's federally guaranteed rights or that Tidwell or Centra's other special conservators of the peace had previously engaged in acts similar to the one alleged here, Counts 1 through 4 fail to state a plausible § 1983 claim against Centra under either an inadequate-hiring or failure-to-train theory.

### 3. Counts 1 through 4 fail to allege a plausible § 1983 claim against Centra based on a constitutionally deficient disciplinary policy or custom, and Rose's proposed amendment would be futile.

Rose agrees that his § 1983 claims against Centra based on a constitutionally deficient disciplinary policy or custom are not adequately pleaded.  (Pl.'s Opp'n Mem. 10).  He contends, however, that he can cure the deficiencies "by amending his complaint to plead that (i) Centra did not discipline Tidwell for his unlawful conduct toward Rose and (ii) Centra has engaged in a pattern of failing to discipline security guards who violate the constitutional rights of others." (*Id.* at 10–11.)

But even if Rose has a good-faith basis for making these allegations, they would not be enough to make out one or more plausible failure-to-discipline claims.  To begin with, even if Centra failed to discipline Tidwell for his allegedly unconstitutional conduct toward Rose, that failure has no causal relationship to that conduct.  Logically, conduct that occurs *after* an alleged violation cannot be the cause (but-for or proximate) of that violation.  *See Durkee v. Minor*, 841

*{#2202073-2, 106642-00076-01}*

F.3d 872, 877 (10th Cir. 2016); *Adams v. Garvin Cty. Bd. of Cty. Comm'rs*, No. 14-cv-1337, 2016 U.S. Dist. LEXIS 128765, at *56–57 (W.D. Okla. Sept. 21, 2016).

Moreover, Rose does not indicate which of Centra's security guards committed the alleged unconstitutional acts, what the acts consisted of, when or where the acts took place, or that a Centra policymaker knew of the acts. Without these and other factual details, an allegation that "Centra has engaged in a pattern of failing to discipline security guards who violate the constitutional rights of others" would be just a naked allegation.

Rose further suggests that he can fix the faults in his failure-to-discipline claims through discovery against Centra. (Pl.'s Opp'n Mem. 10.) At this stage in the case, though, the relevant inquiry is not what facts he may later discover to support the claims but what facts he has actually alleged in the Complaint. *See Little v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 699, 704 (W.D. Va. 2015) (Dillon, J.). Hence, as this Court has observed, Rose "cannot remedy the factual shortcomings of [his] complaint today with facts [he] may discover tomorrow." *Id.*

Accordingly, as Rose concedes, Counts 1 through 4 fail to state a plausible § 1983 claim against Centra based on a failure-to-discipline theory, and his proposed amendment would be futile.

\* \* \*

Since Rose does not allege sufficient facts to show that he was deprived of a federally protected right as a result of Centra's policies or customs, Counts 1 through 4 fail to state a plausible § 1983 claim against Centra, nor can such claims be remedied by amendment.

## B. The Complaint fails to state a plausible negligent-entrustment claim against Centra (Count 12).

Rose argues that he has alleged enough facts to state a negligent-entrustment claim against Centra based on its alleged entrustment of the taser used against him to Tidwell. (Pl.'s

6

Mem. Op. 11.) On the issue of causation, Rose submits that he "alleged facts sufficient to conclude that but for Centra's negligent entrustment of the taser to Tidwell, Rose would not have been injured by the weapon." (*Id.* at 13 (some capitalization omitted).) Accepting this allegation as true, it is wholly inadequate to sustain a negligent-entrustment claim against Centra: Virginia law requires that the negligent entrustment be not only the but-for cause of the alleged injury but also the proximate cause. *Turner v. Lotts*, 422 S.E.2d 765, 767 (Va. 1992).

*Hack v. Nester* provides a good illustration of this proximate-cause requirement. 404 S.E.2d 42 (Va. 1990). There, Weaver entrusted her SUV to Hack, despite knowing (among other things) that Hack had no driver's license and that the SUV was without a left headlight. *Id.* at 43–45. While driving at night, Hack crossed the center line into oncoming traffic and struck and killed Nester. (*Id.* at 43.) Nester's administrator brought suit against both Hack and Weaver. *Id.* As to the latter, the administrator claimed that Weaver was liable for Nester's death because she negligently entrusted her SUV to Hack. The jury returned a verdict against both Hack and Weaver. *Id.*

The Supreme Court of Virginia reversed as to Weaver. *Id.* at 45. As relevant here, it concluded that Weaver's knowledge about Hack's lack of a driver's license and the SUV's lack of a headlight was not sufficient to support a negligent-entrustment claim against her because Nester's administrator failed to prove that the absence of a driver's license or a headlight was a proximate cause of the accident. *Id.* at 44.

*Hack* demonstrates that but-for causation is not enough to make out a negligent-entrustment claim. If it were, then the Supreme Court would have undoubtedly affirmed the jury's verdict against Weaver because, but for her entrusting the SUV to Hack, he would have

7

never struck and killed Nester. Instead, a plaintiff must allege and prove that the negligent entrustment proximately caused his injuries.

In this case, Rose does not allege sufficient facts to establish the necessary causal link between Centra's alleged negligent entrustment of the taser to Tidwell and Rose's alleged injuries. Rose claims that Centra negligently entrusted the taser to Tidwell because it knew or should have known that he was neither trained nor certified to use that particular model of taser. (Compl. ¶ 615.) As explained above, Rose's alleged injuries did not result from Tidwell's failure to properly operate the taser; rather, Rose alleges that he was injured because Tidwell should not have used the taser at all under the circumstances. (*Id.* ¶¶ 216–23.) Rose does not offer any facts showing that Tidwell's alleged lack of training or certification on the specific model of taser used was the cause of Rose's injuries.

Rose's failure to causally relate Tidwell's alleged lack of training or certification on the particular model of taser used to Rose's injuries in this case mirrors Nester's administrator's failure to causally relate Weaver's lack of a driver's license or the SUV's lack of a headlight to Nester's death in *Hack*. Count 12 thus fails to state a plausible negligent-entrustment claim against Centra.

## C. The Complaint fails to state a plausible punitive-damages claim under federal law against Centra (Counts 1–4).

Rose contends that because he has alleged sufficient facts to support his § 1983 claims, he has also alleged enough facts to demand punitive damages on those claims. (Pl.'s Opp'n Mem. 11.) As explained in Centra's opening memorandum and above, his factual allegations fail to show that Centra acted with deliberate indifference to his federally guaranteed rights in hiring, training, or disciplining Tidwell or the other special conservators of the peace in its

8

employ. *See Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987). Hence, Counts 1 through 4 fail to state a plausible-punitive damages claim against Centra under § 1983.

## D. The Complaint fails to state a plausible punitive-damages claim under Virginia law against Centra (Counts 5–10, 12).

Centra moves to dismiss all of Rose's punitive-damages claims under Virginia law or, in the alternative, to reduce them to no more than Virginia's statutory cap on punitive damages. (Centra's Opening Mem. 22–25.) In his opposing memorandum, though, Rose challenges only part of that motion. (Pl.'s Opp'n Mem. 13–15.) He objects to the dismissal of the claims arising from the entrustment of the taser and to the reduction of the total amount of the claims at this stage of the case. (*Id.* at 14–15.) Neither objection has merit.

### 1. Count 12 fails to allege a plausible punitive-damages claim under Virginia law against Centra based on the entrustment of the taser.

Rose contends that he has provided enough facts to overcome Centra's motion to dismiss his punitive-damages claims under Virginia law arising from the entrustment of the taser. (*Id.* at 14.) Specifically, he submits that his allegations show that Centra knew or should have known that issuing a taser to Tidwell "would directly result in harm to others" and that it issued the taser in anticipation that he would use it. (*Id.*)

As discussed in Centra's opening memorandum, Rose alleges no facts showing that Tidwell suffered from any impairment that made him unfit to use the taser or that he had previously used one to cause unreasonable harm to himself or others. Nor does Rose allege any facts establishing that Centra knew or should have known about such impairment or use. (Centra's Opening Mem. 23.) Without such factual allegations, Rose does not and cannot demonstrate that Centra was willfully and wantonly negligent in allegedly entrusting the taser to

9

Tidwell. Accordingly, Count 12 fails to state a punitive-damages claim under Virginia law against Centra. *See Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005).

> **2. To the extent that Counts 5 through 10 and 12 allege one or more plausible punitive-damages claims under Virginia law against Centra, this is the right stage of the case to reduce them to no more than $350,000, in accordance with Virginia's statutory cap on punitive damages.**

Rose agrees that his punitive-damages claims under Virginia law are subject to Virginia's $350,000 statutory cap on punitive damages, but he contends that those claims—which exceed $22 million—should be reduced only if and when the jury awards more than $350,000 in punitive damages. (Pl.'s Opp'n Mem. 14–15.) This position runs contrary to this Court's established practice.

This Court has said that the "better practice is to strike any claim [of punitive damages] for more than the amount of an applicable statutory cap." *Worley v. Kia Motors Am., Inc.*, No. 1:01-cv-102, 2001 U.S. Dist. LEXIS 19637, at *4 (W.D. Va. Nov. 28, 2001) (Jones, J.) (citing *Paul v. Gomez*, 190 F.R.D. 402, 403 (W.D. Va. 2000) (Jones, J.)). Accordingly, it has routinely struck punitive-damages claims exceeding Virginia's $350,000 statutory cap on punitive damages at the motion-to-dismiss stage. *See, e.g.*, *Nelson v. Green*, No. 3:06-cv-70, 2014 U.S. Dist. LEXIS 4432, at *81 (W.D. Va. Jan. 14, 2014) (Moon, J.) (reducing the plaintiff's punitive-damages claim from $5 million to $350,000 on the defendant's motion to dismiss); *Boren v. Nw. Reg'l Jail Auth.*, No. 5:13-cv-13, 2013 U.S. Dist. LEXIS 140169, at *35–36 (W.D. Va. Sept. 30, 2013) (Urbanski, J.) (reducing the plaintiff's punitive-damages claim from $3 million to $350,000 on the defendant's motion to dismiss); *Worley*, 2001 U.S. Dist. LEXIS 19637, at *4 (reducing the plaintiff's punitive-damages claim from $1 million to $350,000 on the defendant's motion to dismiss).

*[#2202073-2, 106642-00076-01]*

Rose's position that now is not the time to reduce the amount of his punitive-damages claims under Virginia law to comply with Virginia's $350,000 statutory cap on punitive damages contradicts these decisions. Thus, to the extent that Rose has stated one or more plausible punitive-damages claims under Virginia law, Centra requests that the Court again follow its established practice and reduce the total amount of those claims to no more than $350,000 at this stage of the case.

**E. If any of Rose's claims against Tidwell are dismissed, then the corresponding claims against Centra must also be dismissed.**

Tidwell moves to dismiss Rose's § 1983 claims (Counts 1–4) and his state-law conspiracy (Count 9) and intentional-infliction-of-emotional-distress (Count 10) claims. (Tidwell's Mot. to Dismiss 1–2, ECF No. 28.)[*] If any of those claims are dismissed, then the corresponding claims against Centra must also be dismissed because it cannot be held liable under § 1983 or Virginia law unless Tidwell committed the alleged constitutional violations or tortious acts. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that there can be no municipal liability absent an underlying constitutional violation by the individual officer); *Monell*, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official policy of some nature caused a constitutional tort."); *Roughton Pontiac Corp. v. Alston*, 372 S.E.2d 147, 149 (Va. 1988) ("It is well settled in Virginia that where master and servant are sued together in tort, and the master's liability, if any, is solely dependent on the servant's conduct, a verdict for the servant necessarily exonerates the master." (citations omitted)).

---

[*] Tidwell also moves to dismiss Rose's state-law, statutory-conspiracy claim (Count 11), but Centra is not named in that claim. (Tidwell's Mot. to Dismiss 1; Compl. ¶¶ 603–609.)

11

# III. CONCLUSION

For the reasons stated in Centra's opening memorandum and above, Rose's Complaint fails to state a plausible § 1983 (Counts 1–4), negligent-entrustment (Count 12), or punitive-damages claim (Counts 1–10, 12) against Centra. Accordingly, Centra asks that the Court grant its motion and dismiss those claims with prejudice.

Dated: May 15, 2017

Respectfully,

CENTRA HEALTH, INC.


By:  /s/Justin E. Simmons
              Of Counsel

Elizabeth Guilbert Perrow (VSB No. 42820)
F. Elizabeth Burgin Waller (VSB No. 74726)
Justin E. Simmons (VSB No. 77319)
J. Walton Milam III (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
bwaller@woodsrogers.com
jsimmons@woodsrogers.com
wmilam@woodsrogers.com

*Counsel for Defendant Centra Health, Inc.*

12

# CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2017, I caused the foregoing document to be filed electronically using the CM/ECF system, which will send notification of the filing to the following counsel of record:

M. Paul Valois
Margret C. Valois
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, VA 24502

*Counsel for Plaintiff Tershaud Savoryea Rose*

Jim H. Guynn, Jr.
GUYNN & WADDELL, PC
415 S. College Avenue
Salem, VA 24153

*Counsel for Defendants City of Lynchburg,*
  *Brandon Clark, Jonathan Bragg, and Robin*
  *Miller*

Cynthia L. Santoni
Eric P. Burns
Dustin T. Rosser
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP
8444 Westpark Drive
Suite 510
McLean, VA 22102

*Counsel for Defendants Rudolph Tidwell,*
  *Christopher Woody, and Deryle Cooper*

    /s/Justin E. Simmons