IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TERSHAUD SAVORYEA ROSE,<br><br>*Plaintiff;*<br><br>v.<br><br>CENTRA HEALTH, INC., *et al.*,<br><br>*Defendants.* | Case No. 6:17-cv-12 |

**DEFENDANT CENTRA HEALTH'S INC.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ANSWERS TO
PLAINTIFF'S FIRST INTERROGATORIES**

Defendant Centra Health, Inc. ("Centra"), by counsel, hereby files this its Memorandum in Opposition to Plaintiff Tershaud Savoryea Rose ("Plaintiff")'s Motion to Compel Answers to Plaintiff's First Interrogatories ("Motion").[1]

**INTRODUCTION**

Although discovery is in its infancy and its Partial Motion to Dismiss has not yet been heard, Centra has provided thirty-paged single spaced pages of Interrogatory Answers to Plaintiff. Plaintiff's Motion to Compel focuses on Centra's Answers and Objections to Interrogatories 8, 9, 11, 12, 14, and 18. Three of these Interrogatories (8, 14, 18) seek Centra's internal investigation, procedures, and policies. Centra has stood on its objections to those Interrogatories as seeking information protected by various privileges (including the attorney client privilege). Centra answered Interrogatory 9, which seeks a full description of the events at issue in this lawsuit. Plaintiff is compelling Centra on Interrogatory 9 to describe in its own

---

[1] Docket No. 62.

words what other named Defendants saw or thought during the incident. Interrogatory 11 seeks information regarding the justification the security guards – other named Defendants in this case – had for pursuing Rose. Centra has referred Plaintiff to those Defendants. With regard to Interrogatory 12 – seeking a description of Plaintiff's injuries – Centra has answered that Interrogatory. Centra requests that Plaintiffs' Motion to Compel be denied in full.

## ARGUMENTS AND AUTHORITIES

### I. INTERROGATORIES NUMBERS 8, 14 & 18 SEEK PRIVILEGED INFORMATION PROTECTED FROM DISCLOSURE IN THIS CASE.

Centra is a regional nonprofit healthcare provider based in Lynchburg, Virginia. As will be discussed below, as a healthcare provider, Centra is uniquely situated under the Virginia Code and afforded certain privileges that protect the disclosure of policies, procedures, and committee decisions.

Thematically, Interrogatories 8, 14, and 18 are similar in that they seek privileged information from Centra. From internal administrative procedures regarding complaints to internal investigations regarding the incident in question to Centra's policies and procedures, Plaintiff's Interrogatories touch on privileged issues ranging from the attorney client privilege to the work product doctrine to those privileges set forth in Virginia Code § 8.01-581-16 and 17. For these reasons, Centra respectfully requests that Plaintiff's Motion to Compel Answers to Interrogatories 8, 14, and 18 be denied. A chart summarizing Interrogatories 8, 14, and 18 is included below for ease of reference:

| INTERROGATORY | SUMMARY OF SUBJECT OF INTERROGATORY | SUMMARY OF OBJECTIONS ASSERTED |
|---|---|---|
| 8 | "Identify and describe the internal administrative procedures for addressing complaints and correcting instances of abuse of authority, excessive force, or malicious prosecution by security | • Centra objects to this Interrogatory on the grounds that it seeks to skirt the limitations on the number of interrogatories as set forth in Rule 33 of the Federal Rules of Civil Procedure by utilizing discrete and distinct subparts. |

2

*{#2229678-1, 106642-00076-01}*
Case 6:17-cv-00012-NKM-RSB   Document 68   Filed 07/31/17   Page 2 of 15   Pageid#: 760

| | | |
|---|---|---|
| | guards…<br><br>a) State whether the procedures include investigation of complaints and disciplinary consequences.<br><br>b) Identify each person responsible for overseeing or initiating the procedures.<br><br>c) Identify each person responsible for the ultimate decision on the complaint." | • Centra objects to this Interrogatory on the grounds it seeks information protected from disclosure based on the attorney client privilege, the work product doctrine, or the attorney work product doctrine.<br>• Centra further objects to this Interrogatory on the grounds that any internal administrative processes or procedures for reviewing patient care is confidential and privileged under Virginia Code § 8.01-581.17 and § 8.01-581.16. |
| 14 | INTERROGATORY 14: If an internal investigation was conducted by CENTRA HEALTH, INC. or any other agency regarding the pursuit, apprehension, detention, arrest or prosecution of TERSHAUD SAVORYEA ROSE, identify any reports that were issued or any actions that were taken as a result of the investigation. Include the full name, address, telephone number and badge or identification number (if any) of each and every person who was either a subject of the investigation or who participated in the investigation. | • Centra objects to this Interrogatory on the grounds it seeks information protected from disclosure based on the attorney client privilege, the work product doctrine, or the attorney work product doctrine.<br>• Centra further objects to this Interrogatory on the grounds that any internal investigations or processes for reviewing patient care are confidential and privileged under Virginia Code § 8.01-581.17 and § 8.01- 581.16. |
| 18 | INTERROGATORY 18: If you contend that your security guards acted according to the policies and customs of CENTRA HEALTH, INC. at all times during the pursuit, apprehension, detention or arrest of TERSHAUD SAVORYEA ROSE, fully describe each such policy or custom and state with particularity all facts supporting the contention. If you contend that different security guards acted differently with regard to your policies or customs, so state with particularity. | • Centra objects to this Interrogatory on the grounds it seeks information protected from disclosure based on the attorney client privilege, the work product doctrine, or the attorney work product doctrine.<br>• Centra objects to this Interrogatory on the grounds that it seeks to skirt the limitations on the number of interrogatories as set forth in Rule 33 of the Federal Rules of Civil Procedure by utilizing discrete and distinct subparts.<br>• Centra further objects to this Interrogatory on the grounds that any policies outlining internal investigations or processes for reviewing patient care are confidential |

| | | and privileged under Virginia Code § 8.01- 581.17 and § 8.01-581.16. |
|---|---|---|

> **A.   Any Discussion of "Internal Review Procedures" After an Incident, and Specifically Any Discussion of an Internal Review of the Alleged Incident that Gave Rise to this Lawsuit, are Privileged Under the Attorney Client Privilege and/or the Work Product Doctrine.**

Through Interrogatories 8 and 14, the Plaintiff in this case seeks to discover how after an incident has occurred, Centra investigates and manages that incident. Discovery is in its infancy in this case and privilege logs have not yet been exchanged prior to the filing of this Opposition brief, but with regard to this incident both in-house and outside counsel were involved in its investigation. As such, the tangible reports and components of this investigation produced at the request of either in-house or outside counsel are privileged under the work product doctrine and protected from discovery. *See Peterson v. Fairfax Hosp. Sys.*, 21 Va. Cir. 70, 71-72 (Fairfax Cty. 1990) (Finding that a hospital's post-incident internal investigation, produced under the direction and control of an attorney, was privileged as part of the attorney's work product); *see also Dolan v. CSX Transp., Inc.*, 31 Va. Cir. 465, 466-67 (Richmond 1993) (Noting that the reports produced from a railroad's internal investigation of an accident are privileged under the work product doctrine). Not only are investigative reports privileged however, as any communication between Centra employees and in-house or outside counsel regarding these matters are subject to the attorney-client privilege.

> **B.   Virginia Code § 8.01-581.16 and § 8.01-581.17 Protect the Disclosure of Policies, Procedures, and Internal Review Committees in the Hospital Setting and Create a Federal Privilege**

Virginia Code §§ 8.01-581.17 and 8.01-581.16 protect the work product of certain committees in healthcare organizations. In pertinent part, Virginia Code § 8.01-581.17(B) provides that:

4

*{#2229678-1, 106642-00076-01}*
Case 6:17-cv-00012-NKM-RSB   Document 68   Filed 07/31/17   Page 4 of 15   Pageid#: 762

> The proceedings, minutes, records, and reports of any (i) medical staff committee, utilization review committee, or other committee, board, group, commission or other entity as specified in § 8.01-581.16…**together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings** unless a circuit court, after a hearing and for **good cause arising from extraordinary circumstances being shown**, orders the disclosure of such proceedings, minutes, records, reports, or communications.

(emphasis added).

The scope of the privilege delineated in this section is defined by reference to Virginia Code § 8.01-581.16, which encompasses a broad range of actors and actions:

> Every member of, or health care professional consultant to, any committee, board, group, commission or other entity shall be immune from civil liability for any act, decision, omission, or utterance done or made in performance of his duties while serving as a member of or consultant to such committee, board, group, commission or other entity, which functions primarily to review, evaluate, or make recommendations on… (ii) the professional services furnished with respect to the medical, dental, psychological, podiatric, chiropractic, veterinary or optometric necessity for such services… (iv) the adequacy or quality of professional services, (v) the competency and qualifications for professional staff privileges, (vi) the reasonableness or appropriateness of charges made by or on behalf of health care facilities...

In *Riverside Hospital v. Johnson*, 272 Va. 518, 636 S.E.2d 416 (2006) the Court noted that "[t]he obvious legislative intent [of the statute] is to promote open and frank discussions during the peer review process among health care providers in furtherance of the overall goal of improvement of the health care system… it is the deliberative process **and the conclusions reached through that process** that the General Assembly sought to protect." *Id*. at 533, 636 S.E.2d at 424 (citing Va. Code § 8.01-581.160). In examining the General Assembly's intent in promulgating § 8.01-581.17, the Virginia Supreme Court was emphatic that: "[t]he obvious

5

{#2229678-1, 106642-00076-01}
Case 6:17-cv-00012-NKM-RSB   Document 68   Filed 07/31/17   Page 5 of 15   Pageid#: 763

legislative intent is to promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of the health care system. If peer review information were not confidential, there would be little incentive to participate in the process." *HCA Health Services of Va., Inc. v. Levin*, 260 Va. 215, 221, 530 S.E.2d 417, 420 (2000). The statute was drafted with the specific purpose of fostering and promoting health care providers' internal performance improvement efforts via a cloak of privilege. Here, the policies and procedures are the result of process deemed privileged by the General Assembly. As such, these policies and procedures are privileged and protected from disclosure.

Rose points out that as a general matter, state privilege law governs state claims, while federal privilege law applies to federal causes of action. However, gleaning federal privilege law is not a formulaic inquiry. Federal Rule of Evidence 501 compels federal courts to define and incorporate privileges while interpreting "common law principles . . . in light of reason and experience." With this command in mind, the Supreme Court has explicitly incorporated certain state-law privileges to govern federal causes of action. See *Jaffe v. Redmond*, 518 U.S. 1, 18 (1996). *Jaffe* directs courts to consider the public policy ramifications of adopting or rejecting certain state law privileges and the privileges' role in facilitating confidence and trust in communications in light of the need to consider probative facts. Just as in *Jaffe*, significant public and private interests support[ ] recognition of the privilege" while "the evidentiary benefit that would result for the denial of the privilege is modest." *Id.* at 11.

The Federal Rules grant courts discretion in formulating applicable privileges, as "Rule 501 allows for 'recognition of a privilege based on a confidential relationship…on a case-by-case basis.'" *Under Seal v. U.S.*, 755 F.3d 213, 217 (4th Cir. 2014) (*quoting Jaffe*, 518 U.S. at 8). Although the proposed version of Rule 501 originally defined nine (9) specific privileges that

6

*{#2229678-1, 106642-00076-01}*

Case 6:17-cv-00012-NKM-RSB   Document 68   Filed 07/31/17   Page 6 of 15   Pageid#: 764

federal courts should recognize, Congress rejected such a narrow view of privilege and provided that the more prudent approach was one that developed over time based on a court's "reason and experience." *See U.S. v. Sterling*, 724 F.3d 482, 500 (4th Cir. 2013) (discussing Congressional intent surrounding Rule 501). As previously mentioned, a reasoned approach contemplating the public and private interests implicated in this case supports the recognition of this information's privileged nature.

In support of his argument, Plaintiff cites *Virmani v. Novant Health, Inc.*, 259 F.3d 284 (4th Cir. 2001). However, Plaintiff fails to recognize that the holding in *Virmani* was narrowly tailored to the issue of "whether the interest in promoting candor in medical peer review proceedings outweighs the need for probative evidence in a discrimination case." *Id*. at 287. The Fourth Circuit made clear that its decision was limited to discrimination cases where the discussions and product of the peer review proceedings amount to the heart of the issue. *Id*. at 289. Additionally, the Fourth Circuit noted that "inhibiting the existence of the evidence at issue is not inconsistent with the goals of medical peer review and is beneficial to societal interests." *Id*. at 290.

Additionally, courts in the Western District have considered the ruling in *Virmani* and recognized the narrow nature of its holding. *Nelson v. Green*, 2014 U.S. Dist. LEXIS 83779, *7-11 (W.D. Va. 2014). The holding in that case noted:

> Importantly, the court **limited its holding to discrimination claims** and distinguished cases where the claim arising from actions that occurred in the peer review proceeding as opposed from those arising independently of the review proceedings, noting that the crucial issue in such cases is not what occurred during peer review, but whether the defendant was in fact negligent in the underlying facts.

7

*Id*. at *8.  The case went on to deny the motion to compel production of documents relating to a disciplinary investigation, in part based on the fact that the claim at issue involved actions occurring outside of peer review proceedings.  *Id*. at *8-10.  Plaintiff simply has not shown an extraordinary circumstance such as to warrant these policies and procedures where the events giving rise to the claims did not actually occur during these peer review meetings.  A fishing expedition to support his claims that are currently the subject of a Motion to Dismiss does not rise to the level of extraordinary circumstances.

The information Plaintiff seeks through Interrogatories 8, 14 and 18 is protected by the attorney-client privilege, the work product doctrine, and finally the statutory privileges provided by the Virginia Code.  Furthermore, Federal Rule of Evidence 501 provides this Court the opportunity to determine the scope of the privilege it applies based on its reasonable consideration of the evidence and its past experience with such issues; these factors support the privileged nature of this information.  Centra's objections are properly lodged on the basis of this information's privilege and it should not be required to disclose this information in light of those protections.

## II. CENTRA'S PREVIOUSLY-SUBMITTED RESPONSE TO INTERROGATORY 9 CONTAINS SIGNIFICANT DETAIL REGARDING THE ALLEGATIONS IN THE COMPLAINT.

Plaintiff also moves to compel several of Centra's answers to its interrogatories, including Interrogatory 9, on the basis that the answers were "essentially non-responsive" and "evasive or incomplete."[2]  Centra's answer to Interrogatory 9 was complete and sufficient; its single-spaced answer to Interrogatory 9 spans almost three full pages.  Furthermore, it directs Plaintiff to reference the voluminous medical records which contain contemporaneous notations

---

[2] Docket No. 62 a 1.

regarding much of the events surrounding Plaintiff's care at Lynchburg General Hospital on February 4, 2016. Nonetheless, Plaintiff seeks more detail through this Motion.

Plaintiff is not entitled to coerce further information through its Motion merely because he does not agree with the answer provided. Further, to the extent Plaintiff feels a need to further develop testimony in this case, he may properly do so through depositions. In full, Interrogatory 9 requests:

> Describe in specific detail the events beginning at the time TERSHAUD SAVORYEA ROSE arrived at Lynchburg General Hospital on February 4, 2016 until he was incarcerated later that evening.

As a preliminary matter, Centra has properly objected to this interrogatory on the basis that it is overly broad and unduly burdensome. In a facility of the size and complexity of Lynchburg General Hospital, it is impractical for Centra to describe "in specific detail" all of the events occurring at its facility during the time frame imposed by Plaintiff. Such a description would not only be incredibly lengthy, but would also involve a significant amount of commentary on matters not relevant to the allegations in this case and require an unduly burdensome investigative effort.

Plaintiff's Motion acknowledges that Centra provided responsive information in response to this Interrogatory but claims that Centra's response does not sufficiently address the "interaction of its security guards with Plaintiff, with each other, with the magistrate or with Lynchburg Police Department officers."[3] Plaintiff should seek this information from the eyewitnesses to these interactions, namely the co-Defendants named in this lawsuit.

---

[3] Docket No. 62 at 4.

9

Finally, Plaintiff raises issue with Centra's response on the basis that it omits the details "of the means by which [Plaintiff] was injured."[4] Centra is not required to respond with its own legal conclusion regarding the causation of Plaintiff's injuries; the burden of proving causation lies on the Plaintiff.

Centra appropriately answered this interrogatory with nearly three single-spaced pages of information. If Plaintiff deems it necessary to develop more fully the factual record then he is free to do so through deposition testimony and further discovery directed towards the eyewitnesses of the events that transpired. However, Plaintiff's to compel further response from Centra based on his dissatisfaction with Centra's answer should fail.

### III. CENTRA HAS SUFFICIENTLY RESPONDED TO INTERROGATORY 11

In Plaintiff's own words, Interrogatory 11 seeks "Centra's contentions with regard to the justification, if any, for the pursuit, apprehension, detention and arrest of the Plaintiff on February 3, 2016."[5] While this summary statement generally explains the subject matter underlying Interrogatory 11, it ignores the realities of this interrogatory as promulgated. Interrogatory 11 spans more than a page of single-spaced text and contains eight (8) discrete and distinct sub-parts. Under the Federal Rules, Plaintiff may serve no more than 25 written interrogatories, "including all discrete subparts" on Centra. FED. R. CIV. P. 33(a)(1). Interrogatory 1 contained four (4) discrete subparts, Interrogatory 8 contained three (3) discrete subparts, and Interrogatory 10 contained two (2) discrete subparts. Therefore, Plaintiff reached his limit on interrogatories under the Federal Rules at subsection (e) of Interrogatory 11. Notwithstanding the fact that Plaintiff exceeded the limit of permissible interrogatories, Centra sufficiently responded to the discovery requests.

---

[4] Docket No. 62 at 14.
[5] Docket No. 62 at 15.

Along with its objections to Interrogatory 11, Centra responded by stating the following:

> …Rose eloped from the Emergency Department of Centra's Lynchburg General Hospital. Upon his elopement, Rose ran throughout the Hospital until exiting Lynchburg General Hospital's building onto Centra's grounds. Rose then ran throughout Centra's properties. Rose was pursued by Centra personnel because he had an IV lock in his arm and because he had just run throughout the Hospital. This IV lock could have caused physical harm to Rose, an infection, or could have been utilized for drugs. Rose was instructed to return to the Emergency Department in order to have the IV lock removed. Rather than to do, he eloped.
>
> With regard to any of the other named Defendants' thoughts, intentions, or actions in this case, Centra refers Rose to those Defendants.

Plaintiff's Interrogatory 11 explicitly requests an explanation of the thoughts, intentions or actions of other named Defendants in this matter. For instance, subsection (c) requests the "circumstances that led Rudolph Tidwell to believe that he was justified in deploying a TASER…" Simply put, this Interrogatory should be directed to Defendant Tidwell and not to Centra. It is not reasonable to expect Centra to either know or be able to communicate the individual mindset of one of its many employees. The individual beliefs and mindset of a sole employee do not reflect Centra's understanding as a corporate entity, and may vary substantially from Centra's corporate knowledge and understanding of events. Additionally, as a named defendant in this case, Tidwell is easily accessible to Plaintiff for further discovery requests.

Finally, Plaintiff contends that this interrogatory is not overly broad or unduly burdensome, because it "seeks information limited to the actions and knowledge of a very few Centra employees regarding events that occurred during a few hours in a single evening."[6] This assertion mischaracterizes the scope of Plaintiff's interrogatory. In this single interrogatory, Plaintiff requests "[t]he circumstances that led *any person* to believe there was…suspicion that

---

[6] Docket No. 62 at 16.

criminal activity was afoot…," "[*a*]*ny other circumstances* that led *any person* to believe that the pursuit, apprehension, detention or arrest was justified," "the circumstances that led *any person* to believe there was probable cause to arrest [Plaintiff]," and "[*a*]*ll details* about the manner of effecting the detention, arrest or prosecution of [Plaintiff]," among many other discrete requests. (Emphasis added). Contrary to Plaintiff's assertions in his Motion, Interrogatory 11 does not require the involvement of "a very few Centra employees," but seemingly requires Centra to investigate the beliefs of *any person* with knowledge of the event, whether that individual works for Centra or not. This is simply not practical or proportional to the needs of the case. Plaintiff has the opportunity to discover the understanding that the other named defendants had regarding the detention of Plaintiff, but he should not be able to require Centra investigate the understanding of each and every individual that has knowledge of this incident.

### IV. CENTRA HAS SUFFICIENTLY ADDRESSED THE CAUSES OF PLAINTIFF'S INJURIES SOUGHT BY INTERROGATORY 12.

Finally, Interrogatory 12 seeks, in full:

> Fully describe how TERSHAUD SAVORYEA ROSE was injured during his pursuit, apprehension, detention and arrest.

In addition to its objections, Centra responded by stating the following:

> Subject to the foregoing objections and without waiving the same, before Rose eloped from the Emergency Department, Rose was being treated for altered mental status. He was found to have multiple abrasions including on his hands, fingers/knuckles, elbows and shins. He was also noted to have some swelling on his face, and also had a small bruise/swelling to the apex of his scalp. After Rose eloped from the Emergency Department, he returned with a new abrasion to his shin and he was noted to have been tased in the back with two taser marks to his lower back. Shortly after arriving, Rose was discharged. At the time of discharge, he was alert and oriented, was in no respiratory distress and his vital signs were within normal limits.

12

Centra's answer is complete and sufficient. Centra previously objected on the grounds that this Interrogatory seeks privileged information and additionally calls for a legal conclusion. Plaintiff of course denies that either of these objections are proper, but has no basis for such a contention.

Any communications between Centra's employees and counsel regarding the incident are protected from discovery by the attorney-client privilege. Additionally, this interrogatory requires a legal conclusion as to the causation of Plaintiff's injuries; Centra is not required to speak to such conclusions, and Plaintiff must meet his own burden of proof on this issue. This is merely another instance where Plaintiff does not like Centra's answer and thus claims deficiencies with Centra's objections in order to seek further information.

## **CONCLUSION**

Centra respectfully requests that the Court enter an Order denying Plaintiff's Motion, finding that Centra's discovery obligations concerning the subject matter of Plaintiff's Motion are complete, and granting Centra such further and other relief as the Court deems appropriate.

Respectfully,

CENTRA HEALTH, INC.

By: /s/ F. Elizabeth Burgin Waller
        Of Counsel

Elizabeth Guilbert Perrow (VSB No. 42820)
F. Elizabeth Burgin Waller (VSB No. 74726)
Justin E. Simmons (VSB No. 77319)
J. Walton Milam III (VSB No. 89406)
WOODS ROGERS PLC

13

*{#2229678-1, 106642-00076-01}*
Case 6:17-cv-00012-NKM-RSB   Document 68   Filed 07/31/17   Page 13 of 15   Pageid#: 771

P. O. Box 14125
Roanoke, VA  24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
bwaller@woodsrogers.com
jsimmons@woodsrogers.com
wmilam@woodsrogers.com
*Counsel for Centra Health, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2017, I electronically filed the foregoing using the CM/ECF system, which will then send a notification of such filing to all counsel of record, including:

M. Paul Valois
Margaret C. Valois
James River Legal Associates
7601 Timberlake Road
Lynchburg, Virginia 24502

*Counsel for Plaintiff Tershaud Savoryea Rose*

Cynthia L. Santoni
Eric P. Burns
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22101

*Counsel for Defendants Rudolph Tidwell, Christopher Woody, and Deryle Cooper*

Jim H. Guynn, Jr.
Susan Waddell
Guynn & Waddell, PC
415 S. College Avenue
Salem, Virginia 24153

*Counsel for City of Lynchburg and LPD Officers Clark, Bragg & Miller*

/s/ F. Elizabeth Burgin Waller
Of Counsel