CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/7/2017

JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

TERSHAUD SAVORYEA ROSE,

*Plaintiff,*

v.

CENTRA HEALTH, INC., *ET AL.*,

*Defendants.*

CASE NO. 6:17-CV-00012

<u>MEMORANDUM OPINION</u>

JUDGE NORMAN K. MOON

This case, brought by Plaintiff Tersahud Savoryea Rose, seeks compensatory and punitive damages against numerous defendants involved in the pursuit, arrest, and prosecution of Plaintiff following his departure from the hospital on February 4, 2016. The matter is before the Court upon three partial motions to dismiss for failure to state a claim. The first motion was filed by the City of Lynchburg ("the City"), and the police officers employed by it (Defendants Clark, Bragg, and Miller). (Dkt. 24). The second motion was filed by Centra Health, Inc. ("Centra")—the hospital where Plaintiff was treated prior to the incident. (Dkt. 25). The third motion was filed by Rudolph Tidwell—the supervising security guard at Centra the night of the incident. (Dkt. 28).

The motion filed by the City, Clark, Bragg, and Miller will be granted. All Counts will be dismissed against the City because Plaintiff has failed to plead facts sufficient to establish a *Monell*-style claim against it. Counts 1, 3, and 4 will be dismissed against Defendants Miller, Bragg, and Clark because they are entitled to qualified immunity.

The motion filed by Centra will be granted in part and denied in part. Counts 1–4 will be dismissed as to Centra because Plaintiff has failed to plead a plausible *Monell*-style claim against

it.[1]  Count 12 will be dismissed because it fails to state a claim for negligent entrustment of a taser. Centra's request for dismissal of Plaintiff's punitive damages claims will be denied because Rule 12(b)(6) is not the proper mechanism for dismissing prayers for relief.  Nevertheless, the punitive damages request will be capped at $350,000 for Counts 5–9, in accordance with Virginia law.

Likewise, Defendant Tidwell's motion will be granted in part and denied in part.  The motion will be denied as to Counts 1–4 because Plaintiff has pled facts sufficient to support § 1983 claims against him, and it will be denied as to Counts 4 and 9 because Plaintiff has properly pled a conspiracy to maliciously prosecute under § 1983 and Virginia common law.  The motion will be granted as to Count 10, however, because Plaintiff has not pled facts sufficient to support a finding of intentional infliction of emotional distress by Tidwell.  In fact, Count 10 will be dismissed in full.

Plaintiff has conceded that Count 11 should be dismissed in its entirety, so it will be dismissed.  Additionally, LPD John Does 1–10, LPD Jane Does 1–10, Centra John Does 1–10, and Centra Jane Does 1–10 will be dismissed and terminated from the case, pursuant to Rule 4(m), because they have not been served.  (*See* dkts. 18, 34).

## I. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1]  Additionally, Plaintiff's counsel conceded at oral argument that the *Monell*-style § 1983 claims against Centra were factually insufficient to survive a challenge under Rule 12(b)(6).

544, 555 (2007) (citations omitted).

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. FACTS AS ALLEGED

The 122-page, 619-paragraph Complaint in this case contains far more allegations than can be summarized here. Instead, the Court will limit itself to a brief summary of the facts relevant to the resolution of the instant motions.

On February 4, 2016, after falling off a bench, Plaintiff was transported to the emergency room at Lynchburg General Hospital, which is owned and operated by Defendant Centra. (Dkt 1 ¶¶ 22–25). While at the hospital, Plaintiff was transferred to a room and an intravenous lock ("IV lock") was placed in his right hand. (*Id.* ¶ 28). He was treated for abrasions and given Versed, a sedative, which rendered him unconscious. (*Id.* ¶¶ 26–28). Sometime before 7:00 p.m., Plaintiff was cleared for release after being examined by a physician and a mental health worker. (*Id.* ¶ 29).

When Plaintiff awoke, he decided to leave the hospital. He dressed himself and walked out of the room. The IV lock in his hand was not attached to any equipment at that time. (*Id.*

¶¶ 30–31). Christopher Woody, a hospital security guard, saw Plaintiff and informed him that he needed to have the IV lock removed before leaving. (*Id.* ¶ 31). Plaintiff stated he would take it out himself and continued his search for an exit. (*Id.* ¶ 31). When Woody began to pursue him, Plaintiff ran to an elevator with hopes of reaching the cafeteria. (*Id.* ¶ 33). Plaintiff then rode the elevator to the basement and left through the cafeteria. (*Id.* ¶ 34).

Defendant Miller, an off-duty Lynchburg Police Department ("LPD") officer working at the hospital, used his police radio to request assistance from on-duty officers. (*Id.* ¶ 37). Based on information he received from an unidentified nurse who had received information from an unidentified person, Miller described Plaintiff as a "black male subject" with "possible warrants" outstanding. (*Id.* ¶¶ 37, 86). Defendants Clark and Bragg, both LPD officers, were off-duty nearby and received Miller's radio call for assistance; they joined the pursuit in an unmarked car. (*Id.* ¶ 45). Meanwhile, Defendant Tidwell, a security supervisor employed by Centra, called 9-1-1 and requested police assistance in detaining Plaintiff. (*Id.* ¶¶ 39–40). He had also ordered his subordinate security guards to detain Plaintiff. (*Id.* ¶ 40).

Defendant Cooper, a Centra security guard, drove a marked security vehicle onto public streets in pursuit of Plaintiff. (*Id.* ¶¶ 41–42). Cooper spotted Plaintiff in a nearby parking lot, but Plaintiff eluded him by running up a hill. (*Id.* ¶ 43). Defendants Clark and Bragg arrived in the parking lot shortly after Plaintiff had escaped Cooper. (*Id.* ¶ 48). As they were continuing their search, Clark observed Plaintiff run into the parking lot of a nearby bank. (*Id.*). Clark exited his vehicle and drew his taser and threatened to fire it if Plaintiff did not stop running. (*Id.* ¶ 50). Plaintiff stopped and turned around; he told Clark that he had no authority to stop him. (*Id.* ¶ 51). Plaintiff turned around and began walking away. (*Id.*).

At this time, Bragg pulled his vehicle ahead of Plaintiff's path, exited his vehicle, grabbed Plaintiff, and pushed him up against the vehicle. (*Id.* ¶ 52). Bragg and Clark then

attempted to handcuff Plaintiff, but he resisted by stiffening his arms without striking either officer. (*Id.* ¶ 55). Tidwell and Cooper arrived on the scene at this time, and Tidwell began to assist. (*Id.* ¶¶ 56, 60). Clark then knocked Plaintiff's legs out from under him, bringing all four men to the ground; Plaintiff incurred lacerations as a result. (*Id.* ¶ 61).

Clark climbed on top of Plaintiff's back and grabbed his right arm. (*Id.* ¶ 62). Tidwell then used the "drive stun mode" of the taser to administer two five-second bursts to Plaintiff's back. (*Id.* ¶ 63). These bursts left scars on Plaintiff's back and caused significant pain. (*Id.*). Clark then placed Plaintiff in a chokehold. (*Id.* ¶ 67). Meanwhile, Bragg punched and pinched Plaintiff several times. (*Id.* ¶ 64). Clark told Plaintiff he was "under arrest," and along with help from other officers, Plaintiff was handcuffed. (*Id.* ¶¶ 69-71).

Plaintiff was placed in a marked police car and transported back to the emergency room. (*Id.* ¶¶ 71, 73). Bragg and Clark sought an arrest warrant for Plaintiff for disorderly conduct, but the magistrate refused to issue a warrant. (*Id.* ¶ 77). Tidwell, after conversing with Bragg or Clark, obtained a misdemeanor warrant against Plaintiff for trespassing on Centra's property. (*Id.* ¶ 78). Bragg then obtained a misdemeanor warrant against Plaintiff for obstruction of justice. (*Id.*). Plaintiff was arrested and held without bond on these charges for fourteen days before he was granted bail. (*Id.* ¶ 79). The misdemeanor trespass charge was dismissed on March 10, 2016, for lack of probable cause. (*Id.* ¶ 80). On September 26, 2016, a jury found Plaintiff not guilty of obstruction of justice. (*Id.* ¶ 81).

### III. DISCUSSION

The Complaint contains twelve counts: (1) unlawful seizure, false imprisonment, and false arrest in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth Amendment; (3) malicious prosecution in violation of the Fourth Amendment; (4) conspiracy to maliciously prosecute in violation of the Fourth Amendment; (5) common law assault; (6)

common law battery; (7) common law false imprisonment; (8) common law malicious prosecution; (9) common law conspiracy to maliciously prosecute; (10) intentional infliction of emotional distress; (11) statutory conspiracy to maliciously prosecute; and (12) negligent entrustment of a taser.

### A. Motion #1: Defendants Clark, Bragg, Miller, and the City (Dkt. 24)

Defendants seek partial dismissal of Counts 1–4 and full dismissal of Count 11. Plaintiff has conceded and withdrawn Count 11. (Dkt. 36 at ECF 20). The remaining Counts will be considered in turn.

### 1. Count 1: Unlawful Seizure, False Imprisonment, and False Arrest (§ 1983)

Count 1 alleges that Defendants Clark, Bragg, and Miller violated Plaintiff's Fourth Amendment right by detaining him without probable cause. (Dkt. 1 ¶¶ 99–112). Furthermore, Count 1 alleges that the City is liable as a municipality for its failure to train and supervise its officers with regards to detention and arrest. (*Id.* ¶ 121–34). Defendants Clark, Bragg, Miller, and the City ask the Court to dismiss Count 1 against them. Clark, Bragg, and Miller assert that they are entitled to qualified immunity, while the City argues that Plaintiff has failed to state a claim of municipal liability. (Dkt. 26 at 1).

### a. Qualified Immunity: Defendants Bragg and Clark

Qualified immunity protects "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013). To be entitled to qualified immunity, a defendant must show that even if there was a constitutional violation, the right in question was not clearly established at the time that the defendant acted. *Henry v. Purnell*, 652 F.3d 524, 531

(4th Cir. 2011) (en banc); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006).

Defendants Bragg and Clark assert that they are entitled to qualified immunity because they reasonably relied on information from Defendant Miller, a fellow officer. (Dkt. 26 at 3). They argue that, regardless of whether there was probable cause to arrest Plaintiff, they had reason to believe probable cause existed because they were told my Miller that Plaintiff had "possible warrants" outstanding and should be apprehended. (Dkt. 1 ¶ 37).

Police officers routinely rely on information from other officers, and reliance—absent clear, contradictory evidence—is reasonable. *See, e.g.*, *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid" have established probable cause.); *Lucas v. Shivley*, 31 F. Supp. 3d 800, 813 (W.D. Va. 2014) ("Indeed, a police force could not function without reasonable reliance on the statements and efforts of others." (citations omitted)).

Although the arrest may ultimately be found to be in violation of the Fourth Amendment, *see, e.g.*, *Whiteley*, 401 U.S. at 568–69, the officers who reasonably relied on fellow law enforcement are shielded from individual liability. *See, e.g.*, *United States v. Hensley*, 469 U.S. 221, 232 (1985) ("In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit."); *Liu v. Phillips*, 234 F.3d 55, 57 (1st Cir. 2000) ("Where the authorizing officer has made a factual mistake but the mistake is not apparent, immunity for the officer who reasonably assisted is well settled." (citations omitted)); *Lucas v. Shivley*, 31 F. Supp. 3d 800, 813–17 (W.D. Va. 2014), *aff'd*, 596 F. App'x 236 (4th Cir. 2015). This is because qualified immunity protects officers who "could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). Defendants Bragg and Clark

could reasonably believe that their actions were lawful because they reasonably relied in good faith on information from a fellow officer.

Thus, even if Defendants Bragg and Clark violated Plaintiff's Fourth Amendment rights, they were not being "plainly incompetent" by "transgressing bright lines" when they decided to arrest Plaintiff. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). A reasonable officer would have relied on Miller's call for help in the absence of clear contradictory evidence. In fact, Plaintiff's evasive actions would have served to confirm Miller's statement that Plaintiff was wanted for criminal conduct. *Cf. Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (explaining that unprovoked flight, when combined with other circumstances, can lead to reasonable suspicion). Simply put, the conduct of Defendants Bragg and Clark did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* Accordingly, they are entitled to qualified immunity on Count 1.

*b. Qualified Immunity: Defendant Miller*

Defendant Miller's role in the incident was meaningfully different from that of Defendants Bragg and Clark, and it warrants separate consideration. Based on information he received from an unidentified nurse who had received information from an unidentified person, Miller was the one who requested Bragg and Clark's assistance that ultimately led to Plaintiff's arrest. (Dkt. 1 ¶¶ 37, 86). The Complaint does not allege that Miller actually arrested Plaintiff, but Plaintiff contends that Miller is liable because he "request[ed] or direct[ed] another to do so." (*Id.* ¶ 101).

The problem with this argument, however, is that the Complaint does not allege that Miller directed Bragg and Clark specifically to *arrest* Plaintiff. It merely states that Miller requested aid in "apprehending" Plaintiff. (*Id.* ¶ 37). Miller can be held liable only for conduct that he *specifically directed* or had knowledge of, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.

1994), and not every apprehension is an arrest. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 22 (1968). Miller's request would certainly include an apprehension short of an arrest, such as a brief investigatory stop.

Furthermore, the facts demonstrate that Miller possessed reasonable articulable suspicion to support such an apprehension when he called for backup. From Miller's perspective, he was aware of an individual with an IV lock in his arm who was running through the hospital to evade a Centra security guard, and he had been told that the individual had possible warrants out against him. (*Id.* ¶¶ 31–37, 86). Although in a perfect world Miller would have had time to verify this information, what he knew justified at least a *Terry* stop of Plaintiff to investigate the situation further, especially considering the heightened security concerns in hospitals. If Miller had simply ignored the information he received and a patient or employee was injured, he likely would have been viewed as negligent. In this era of active-shooter incidents and acts of public violence, Miller had an obligation to investigate these claims of a man acting erratically in the hospital. Even if Miller was ultimately incorrect in his assessment, the Court cannot second guess his split-second judgments based on the benefit hindsight. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

Accordingly, the Court will dismiss Count 1 because Plaintiff has failed to plead a constitutional violation by Miller. There are no allegations that he actually conducted the arrest, and the Complaint states that he requested assistance in apprehending Plaintiff after developing reasonable articulable suspicion. He cannot be held liable for Plaintiff's eventual arrest—even if it was unlawful—because he did not specifically direct the arrest.

Alternatively, even if Miller's request for apprehension were construed as unlawfully directing Plaintiff's arrest, he would be entitled to qualified immunity because he reasonably

relied in good faith on the information available to him at that time.  *See, e.g.*, *Hensley*, 469 U.S. at 232 ("In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit."); *Liu*, 234 F.3d 55, 57 (1st Cir. 2000) ("Where the authorizing officer has made a factual mistake but the mistake is not apparent, immunity for the officer who reasonably assisted is well settled." (citations omitted)); *Lucas*, 31 F. Supp. 3d at 813–17 (W.D. Va. 2014), *aff'd*, 596 F. App'x 236 (4th Cir. 2015).

*2.  Counts 3 & 4:  Malicious Prosecution and Conspiracy to Maliciously Prosecute (§ 1983)*

Defendants Bragg and Clark ask the Court to grant them qualified immunity as to Counts 3 and 4 because the "right to be free from malicious prosecution is not clearly established in the Fourth Circuit."  (Dkt. 26 at 4).

This contention is correct in the technical sense that the Fourth Circuit does not recognize *common law* malicious prosecution as an "independent cause of action." *Lambert v. Williams*, 223 F.3d 257, 260, 262 (4th Cir. 2000) ("Common law malicious prosecution is not itself redressable under § 1983.").  Nevertheless, the Fourth Circuit has stated that "a malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (citing *Lambert*, 223 F.3d at 261).  More specifically, the plaintiff must satisfy two elements: (1) the plaintiff was seized pursuant to legal process that was not supported by probable cause; and (2) the criminal proceedings terminated in plaintiff's favor.  *Id.*; *see also Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (describing the two elements as "a wrongful seizure and a termination in her favor of the proceedings following her seizure").

Thus, Plaintiff's malicious prosecution and conspiracy to maliciously prosecute claims— although inartfully drafted—are based upon law that is clearly established in the Fourth Circuit.

That is, "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution" is recognized in this circuit. *Lambert*, 223 at 262; *see also  Seung Lee*, 584 F.3d at 199.  Malicious prosecution "is not an independent cause of action," *Lambert*, 223 F.3d at 262, but a similar claim is cognizable under the Fourth Amendment.  *Seung Lee*, 584 F.3d at 199.

Despite Defendants' incorrect assertion that the "right to be free from malicious prosecution is not clearly established in the Fourth Circuit," (dkt. 26 at 4), they are nevertheless entitled to qualified immunity.  This is because the first element of both Count 3 and Count 4 is seizure without probable cause, *see Burrell*, 395 F.3d at 514; *see also Seung Lee*, 584 F.3d at 199, for which Defendants are entitled to qualified immunity.  *See supra* Subsection III.A.1. Stated differently, the malicious-prosecution-style Fourth Amendment claim to that the Fourth Circuit has recognized requires Plaintiff to prove an unlawful seizure.  As discussed above, Defendants Bragg, Clark, and Miller are entitled to qualified immunity for their seizure of Plaintiff.  Thus, it logically follows that they are entitled to qualified immunity from a Fourth Amendment claims that requires proof of an unlawful seizure.  Accordingly, Counts 3 and 4 will be dismissed.

*3.  City of Lynchburg: Counts 1–4*

Plaintiff's § 1983 claims—Counts 1, 2, 3, and 4—have also been brought against the City pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). *See id.* (holding that "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom'").  Plaintiff alleges that the City has "engaged in deliberately indifferent training of LPD officers" with regard to (1) detention and arrest; (2) lawful application of force; and (3) malicious prosecution.  (Dkt. 1 ¶¶ 130, 233, 300, 363).

The City asks the Court to dismiss all of these claims on the ground that Plaintiff has

failed to plead facts sufficient to establish that the City's training or procedures were constitutionally deficient. The City argues that the Complaint is devoid of any allegations that the officers' actions were actually part of a custom or policy as required under *Monell*.

This assertion is correct as to Counts 1, 3, and 4. Despite the exceptional length of the Complaint, the claims found in Counts 1, 3, and 4 are nothing more than "labels," "conclusions, and a formulaic recitation of the elements," which "will not do." *Twombly*, 550 U.S. at 555. The Complaint does not describe widespread conduct or detail the policies that Plaintiff believes to be unconstitutional. *See Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987) ("Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the single violation charged."). The allegations are based solely on this isolated incident and "a policy or custom of permitting LPD officers" to do what they did here, but no detail about the policy is provided. (Dkt. 1 ¶ 131). Without additional detail, Counts 1, 3, and 4 violate the *Twombly/Iqbal* standard because they are nothing more than formulaic recitations of the elements combined with legal conclusions.

Count 2, however, does provide additional details. Unlike Counts 1, 3, and 4, Count 2 contains citations to LPD's actual use-of-force policy that was in place at the time of the incident. (Dkt. 1 ¶ 234; dkt. 1-4). Plaintiff alleges that LPD's use of force policy was unconstitutional because it allowed for use of a taser in circumstances that were prohibited by the Fourth Circuit. *See Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 909 (4th Cir.), *cert. denied*, 137 S. Ct. 61 (2016) ("[A taser] may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser.").

"When a municipal 'policy or custom' is itself unconstitutional, i.e., when it directly commands or authorizes constitutional violations, the causal connection between policy and

violation is manifest and does not require independent proof." *Spell*, 824 F.2d at 1387 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985)).  But this presupposes that the policy was actually being exercised when the alleged constitutional violation occurred.  *See Tuttle*, 471 U.S. at 822–23 ("[N]o evidence was needed other than a statement of the policy by the municipal corporation, *and its exercise*." (emphasis added)).  It is not enough that a given policy was unconstitutional and Plaintiff's rights were violated.  The violation needs to be committed by someone actually governed by the policy in question.  *See id.*

Here, the person who is alleged to have used a taser unconstitutionally, Defendant Tidwell, was not a member of the LPD.  He was a special conservator of the peace.  There are no allegations that Tidwell was bound by the LPD's use-of-force policy, and the policy itself states that its purpose was "to establish guidelines concerning the authorization, implementation, investigation and documentation of the use of force *by officers of the Lynchburg Police Department*."  (Dkt. 1-4 at 1) (emphasis added); *see also id.* ("It shall be the policy of the Lynchburg Police Department that *officers* will use only that force necessary to protect life and effect lawful objectives." (emphasis added)).  Likewise, the order appointing Tidwell makes no mention of complying with local law-enforcement policies.  Instead, it states that Tidwell may use "up to the same amount of force as would be allowed to a law-enforcement officer employed by the Commonwealth or any of its political subdivisions making a lawful arrest."  (Dkt. 1-3 at 2).[2]  Absent any allegations the Tidwell was bound by LPD's use-of-force policy, the City cannot be held liable for the actions of someone outside its purview.[3]

---

[2]    This is in contrast to other circumstances where an order appointing a special conservator of the peace has placed the new officer under the direct supervision of local law enforcement. *See, e.g.*, *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 719 (4th Cir. 1999); *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003).

[3]    At oral argument, Plaintiff's counsel sought to salvage his claims against the City by pointing out that Defendant Clark, who is an LPD officer, pointed his taser at Plaintiff during his

Accordingly, the Court will grant the City's motion to dismiss Count 2 because Plaintiff has failed to plead that Tidwell was bound by or exercising LPD's use-of-force policy when he used his taser against Plaintiff. Even if LPD's policy was unconstitutional, it cannot be the but-for or proximate cause of an alleged constitutional violation committed by someone not governed by the policy.

### B. Motion #2: Defendant Centra (Dkt. 25)

Centra asks the Court to dismiss Counts 1, 2, 3, 4, and 12. Centra also asks the Court to strike or limit Plaintiff's request for punitive damages.

### 1. Counts 1–4: Section 1983

Plaintiff lodges four *Monell*-style claims against Centra on the theory that its policies or customs were the cause of Plaintiff's constitutional deprivations.[4] Typically, a private corporation would not be liable under § 1983, but the Fourth Circuit has recognized an exception to this rule where private security guards have been appointed as special conservators of the peace ("SCOPs"). *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 719, 727–28 (4th Cir. 1999) ("*Monell* and its progeny apply equally to a private corporation that employs special police officers."). This means corporations like Centra can be held liable "*only* when an official policy or custom causes the alleged deprivation of federal rights" *Id.* at 728 (emphasis in orginial). Claims based on *respondeat superior* are improper. *Id.*

---

pursuit. (Dkt. 1 ¶ 50). This argument fails for two reasons. First, because Clark did not use the taser to harm Plaintiff physically, it has no bearing on Plaintiff's excessive-force claim. Second, Clark's mere pointing of the taser is not necessarily unconstitutional under *Estate of Armstrong*, which discussed when a taser can be lawfully "deployed" (that is, actually administering a shock, not simply drawing the weapon). *Compare Estate of Armstrong*, 810 F.3d at 909 ("[A taser] may only be deployed when . . . ."), with *id.* at 862 (Officer Gatling drew his taser . . . . That warning had no effect, so Gattling deployed the taser.") (demonstrating that drawing a taser is not synonymous with deploying a taser).

[4] At oral argument, Plaintiff's counsel conceded that his client's § 1983 claims against Centra were factually insufficient to survive a motion to dismiss. In an abundance of caution, the Court will proceed with its analysis in case counsel's comments at oral argument were not intended as a formal withdrawal of claims.

Plaintiff's *Monell*-style claims against Centra are based on three different theories of liability: (1) deficient hiring policy; (2) deficient training policy; and (3) deficient discipline policy. Each will be considered in turn, and Counts 1–4 will be dismissed as against Centra.

*a. Deficient Hiring Policy*

In order to assert § 1983 liability on a deficient-hiring theory, Plaintiff must show that Centra acted with "deliberate indifference" in exercising its hiring policies. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). This "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* Such proof must go beyond "the mere probability that any officer inadequately screened will inflict any constitutional injury." *Id.* at 412. "[I]t must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* (emphasis in original).

Here, Plaintiff has failed to allege facts sufficient to meet this "stringent standard of fault." Most notably, the Complaint lacks any allegations regarding Tidwell's background or the background of other SCOPs. Without such allegations, it is unclear how Tidwell or others were highly likely to commit constitutional violations at the time of their hiring.[5] The only allegations regarding Centra's hiring policy are (1) that Centra's SCOPs are not "qualified or trained to protect the constitutional rights of individuals"; and (2) that Centra "does not require psychological evaluations or fitness for duty examinations of the armed security guards it hires." (Dkt. 1 ¶ 250). This first allegation is in conflict with the order appointing Tidwell as an SCOP, which states he "has met the registration and training requirements established by the Virginia

---

[5]     *See Sampson v. Highland Cty. Va. Bd. of Supervisors*, No. 7:15-cv-465, 2017, 2017 WL 1383951, at *2 (W.D. Va. Apr. 13, 2017) ("Sampson has pled no facts suggesting that the Board of Supervisors was aware, let alone disregarded, a known or obvious consequence of hiring the applicant."); *Lee v. City of Richmond*, No. 3:12-cv-471, 2013 WL 1155590, at *5 (E.D. Va. Mar. 19, 2013) ("[T]he Amended Complaint never asserts that there was any event in the officers' past conduct that would have made hiring a constitutionally deficient decision.").

Department of Criminal Justice Services." (Dkt. 1-3 at 1).

As for the second allegation, it is unclear how the failure to conduct psychological and fitness-for-duty examinations made a constitutional violation an "obvious consequence," *Brown*, 520 U.S. at 410—especially considering that Tidwell was vetted and approved by the Circuit Court for the City of Lynchburg and the Virginia Department of Criminal Justice Services. (*See id.*). Without additional allegations, Plaintiff has failed to establish that Centra's hiring policies were constitutionally deficient. Plaintiff's allegations are nothing more than formal recitations of elements and legal conclusions.

### b. *Deficient Training Policy*

Plaintiff's next theory of § 1983 liability is based upon Centra's alleged failure to properly train Tidwell and other officers to avoid constitutional violations. His claim fails, however, because it is based solely on the incident involving Plaintiff, rather than a pattern of similar conduct by improperly trained employees. *See Tuttle*, 471 U.S. at 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (internal quotation marks omitted)).

The only allegation regarding Centra's training is that another security guard, Wesley Gillespie, was trained to use a Model X2 taser but carried a Model X26. (Dkt. 1 ¶ 251). This allegation, standing alone, is not sufficient to establish a failure-to-train claim under *Monell*. As discussed below, the alleged violation in this case did not occur because the taser was improperly operated; Plaintiff's theory is that the taser should not have been used at all. Because "[t]here

must at least be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue," this allegation does not save Plaintiff's *Monell* claim. The fact remains that he has failed to demonstrate a custom or policy that led to his injuries—either by description of a tangible policy or a pattern of conduct indicative of a policy.

*c. Deficient Discipline Policy*

Plaintiff's third and final theory for holding Centra liable under § 1983 is that Centra has maintained a constitutionally deficient policy for disciplining security guards. (*See* dkt. 1 ¶¶ 166, 249, 313, 375). Plaintiff concedes that his allegations of deficient discipline policy are impermissibly vague. (Dkt. 35 at ECF 13).

Plaintiff requests leave to amend the Complaint regarding such policies or dismissal without prejudice. He argues that he possesses insufficient facts at this time regarding any written policies or past incidents involving Centra security guards. He is also unsure about whether Tidwell was properly disciplined after this incident.

Because a response brief is not the appropriate mechanism for requesting leave to amend, the Court will not grant leave at this time. However, dismissal will be without prejudice insofar as it concerns Centra's discipline policies or customs in place *at the time of the incident*. The Court notes that information regarding Tidwell's punishment from Centra following the incident—or lack thereof—cannot form the sole basis of a failure-to-discipline claim because subsequent conduct cannot be the cause of the precedent violation. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009); *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 535 (E.D. Va. 2015).

*2. Count 12: Negligent Entrustment of a Taser*

Plaintiff alleges that Centra is liable for Plaintiff's taser-related injuries because it negligently entrusted a taser to Defendant Tidwell as an SCOP. This Count will be dismissed

because the Complaint lacks facts sufficient to state a plausible claim of negligent entrustment under Virginia law.

To state a claim for negligent entrustment of chattel (here, a taser), a plaintiff must show that "the owner knew, or had reasonable cause to know, that he was entrusting his [chattel] to an unfit [user] likely to cause injury to others." *Denby v. Davis*, 212 Va. 836, 838 (1972). "Furthermore, in order to impose liability upon the owner, the plaintiff must prove that the negligent entrustment of the [chattel] to the tortfeasor was a proximate cause of the accident." *Turner v. Lotts*, 244 Va. 554, 557 (1992).

As an initial matter, the parties dispute whether Plaintiff has sufficiently pled that Centra knew or had reason to know that Tidwell would use the taser to injure others. Plaintiff's primary allegation is that Tidwell was not certified in the specific model taser that was used against Plaintiff. [6] (Dkt. 1 ¶ 614). Centra disputes whether this lack of certification was enough to demonstrate that Centra knew or should have known that Tidwell was likely to cause injury to others. (Dkt. 27 at 18–19).

The Court need not wade into this dispute, however, because Plaintiff has failed to adequately plead proximate cause. Even assuming that Plaintiff's allegations are sufficient to demonstrate Centra's negligence, the Complaint is devoid of allegations that Centra's negligence was the proximate cause of Plaintiff's injuries. Besides stating that Centra's negligent entrustment "was a direct and proximate cause of [Plaintiff's] injuries"—an impermissible legal conclusion—the Complaint does not allege a sufficient causal relationship between the entrustment and Plaintiff's injuries. There are no allegations, for instance, that Tidwell failed to use the taser properly or used the taser accidentally because he was unfamiliar with its

---

[6]     At oral argument, Plaintiff's counsel appeared to concede that Tidwell actually was actually trained and certified on the model taser that he used against Plaintiff.

functions.[7]  Instead, Plaintiff's claim is that the taser should not have been used at all.  (*See* dkt. 1 ¶¶ 216–18).  This logic fails because the decision of when and when not to employ a taser is unrelated to being certified to use a specific taser model.[8]

The case of *Hack v. Nester*, 241 Va. 499 (1990), is analogous and illustrative.  In *Hack*, a car owner entrusted her vehicle to an unlicensed driver, which is negligence per se.  *Id* at 503. The unlicensed driver then became drunk and caused a fatal accident.  Nevertheless, the Supreme Court of Virginia ruled that the owner could not be held liable because proximate cause was lacking.  *Id.* at 503–04.  The fact that made the entrustment negligent—the driver being unlicensed—was unrelated to the actual cause of the accident—the driver's intoxication.  *Id.* Likewise in the instant case, the fact that made the entrustment allegedly negligent—Tidwell's lack of certification—was unrelated to the actual cause of Plaintiff's injuries—Tidwell's decision to use the taser.

Accordingly, Count 12 will be dismissed because Plaintiff has not alleged that Centra's negligent entrustment was the proximate cause of his injuries.

### 3.  Punitive Damages

Additionally, Centra asks the Court to strike Plaintiff's claims for punitive damages against it.  Because the § 1983 claims against Centra (Counts 1–4) and the negligent entrustment claim (Count 12) will be dismissed, the issue of punitive damages for those counts need not be discussed.  The Court is then left to consider the punitive damages request based on the state-law

---

[7]  The Complaint actually suggests that Tidwell knew how to properly operate the Model X26 taser.  It is alleged that Tidwell used the "drive stun mode," which is the appropriate mode for close encounters, rather than the "dart mode," which is meant for longer distances. Furthermore, the allegation that Tidwell used the "drive stun mode" twice is additional evidence that he knew how to operate the taser.  (*See* dkt. 1 ¶ 63 n.6).  Plaintiff's counsel averred at oral argument that Tidwell may have deployed the taser accidentally the second time, but the Court was unable to find that allegation within the four corners of the Complaint's 122 pages.

[8]  In fact, Plaintiff concedes that Tidwell was likely certified to use a different model of taser.  (*See* dkt. 1 ¶ 58 n.4).  As such, Plaintiff's theory of negligence is not that Tidwell was uncertified to use *any* kind of taser, but simply that he was not certified to use the Model X26.

claims found in Counts 5–9.[9]

Judges in the Western District of Virginia have established a policy of not addressing remedies issues at the 12(b)(6) stage, which is designed to address the sufficiency of claims.[10] Because Plaintiff's requests for punitive damages are not separate claims, they will not be dismissed at this time. Nevertheless, because Virginia law caps punitive damages at $350,000, *see* Va. Code § 8.01-38.1, Plaintiff's demand for punitive damages on Counts 5–9 will be reduced. *See, e.g.*, *Nelson v. Green*, No. 3:06-cv-70, 2014 WL 131055, at *24 (W.D. Va. Jan. 14, 2014) (Moon, J.); *Boren v. Nw. Reg'l Jail Auth.*, No. 5:13-cv-13, 2013 WL 5429421, at *11 (W.D. Va. Sept. 30, 2013) (Urbanski, J.). Plaintiff's total request for punitive damages in Counts 5–9 cannot exceed $350,000.

### C. Motion #3: Defendant Tidwell (Dkt. 28)

Defendant Tidwell requests dismissal of Counts 1, 2, 3, 4, 9, 10, and 11. As discussed above, Plaintiff has conceded that Count 11 should be dismissed. The remaining arguments for dismissal will be discussed below.

### 1. Counts 1–4: Color of State Law

Defendant Tidwell asks the Court to dismiss Counts 1, 2, 3, and 4 against him because he was not acting under color of state law. *See* 42 U.S.C. § 1983; *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982). Plaintiff alleges that Defendant Tidwell aided in Plaintiff's arrest, used excessive force by shocking Plaintiff with is taser, and sought baseless warrants for Plaintiff's

---

[9]     Because Count 10 will be dismissed against all defendants, *see infra* Subsection III.B.3, the punitive damages request found therein need not be addressed either.

[10]     *See, e.g.*, *Rosenthal v. R. W. Smith Co.*, No. 6:16-cv-56, 2017 WL 1750704, at *8 (W.D. Va. May 3, 2017) (Moon, J.); *Coogan-Golden v. Wal-Mart Stores E., LP*, No. 5:15-cv-54, 2017 WL 963235, at *1–2 (W.D. Va. Mar. 13, 2017) (Dillon, J.); *Meeks v. Emiabata*, No. 7:14-cv-534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) (Dillon, J.); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (Urbanski, J.); *Debord v. Grasham*, No. 1:14-cv-39, 2014 WL 3734320, at *1 (W.D.Va. July 28, 2014) (Jones, J.).

arrest after conspiring with LPD officers. Defendant Tidwell argues that his participation in the arrest and prosecution of Plaintiff was outside the scope of his authority as an SCOP, and thus he was acting in his private capacity, rather than under color of state law.

Although the Fourth Amendment "does not provide protection against searches by private individuals acting in a private capacity," it does protect against "those private individuals acting as instruments or agents of the Government." *United States v. Day*, 591 F.3d 679, 683 (4th Cir. 2010). To determine whether a private individual is operating in a private capacity or as an instrument of the state, two "primary factors" are to be considered: "(1) whether the Government knew of and acquiesced in the private individual's challenged conduct; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation." *Id.* Here, both factors weigh in favor of finding that Defendant Tidwell was acting under color of state law because he was acting as an SCOP pursuant to the express authority of the Commonwealth of Virginia.

Under Virginia law, a corporation, such as Centra, may petition a circuit court to appoint SCOPs who may have "all the powers, function, duties, responsibilities and authority of any other conservators of the peace" within a prescribed geographic location. Va. Code § 19.2-13(A). On August 29, 2013, Defendant Tidwell, upon the petition of Centra, was appointed as an SCOP. The order approving this appointment was attached to the Complaint. (Dkt. 1-3) [hereinafter "SCOP Order"].

The SCOP Order states that Tidwell is an SCOP "for the geographical locations and on the petitioner's premises . . . as well as in the streets and sidewalks adjacent to the grounds thereof." (SCOP Order at 1–2). It provides further that he:

> shall have all the powers, functions, duties, responsibilities and authorities of
> Special Conservator of the Peace; [he] shall be considered a 'law enforcement
> officer' . . . be permitted to perform the duties of a law-enforcement officer at the
> direction and discretion of [Centra]; that he may use 'police' on any badge or

uniform worn in the performance of his duties; [he] may affect arrests, at the discretion and direction of [Centra], using up to the same amount of force as would be allowed to a law-enforcement officer employed by the Commonwealth . . . [and he] is authorized to carry a weapon while within the scope of his employment as [an SCOP].

(SCOP Order at 2).

Defendant argues that he was acting outside the scope of his SCOP authority when he pursued and arrested Plaintiff, and thus he was operating as a private actor. Although the arrest took place off of Centra's property, it is undisputed that the arrest location was "adjacent to the grounds thereof," as provided in the SCOP Order and permitted by statute. (Dkt. 1-3 at 1–2); Va Code § 19.2-13(A). Instead, Tidwell argues that he was operating outside his authority because he was not acting "at the direction and discretion" of Centra, as required by the SCOP Order.

This argument flies in the face of a natural reading of the SCOP Order's language. When the circuit court authorized Tidwell to perform the duties of a law-enforcement officer and affect arrests "at the discretion and direction" of Centra, it could not have meant that each action Tidwell takes must be directly ordered by his employer. Such an interpretation would render Tidwell impotent and lead to preposterous results. When confronted with unlawful activity, Tidwell would have to seek approval before exercising the duties of a law-enforcement officer or making an arrest. This would be incredibly inefficient and completely ineffective in exigent circumstances.

A more natural reading of the phrase "at the discretion and direction" is that Centra had the discretion to limit or circumscribe Tidwell's authority and direct him as it so desired. The circuit court was prescribing the outer limits of Tidwell's authority, but giving his employer, Centra, the ability to define Tidwell's job responsibilities within those limits. It is perfectly natural to expect that Centra may have instituted its own limits or codes of conduct for SCOPs, but there are no allegations that Tidwell was restricted by Centra from pursuing suspects and

making arrests.  Accordingly, based on the Complaint, Tidwell was acting within the scope of his SCOP authority.

Tidwell argues in the alternative that even if he was acting within the scope of his SCOP, he was not acting under color of state law because the government's role in his activities were too passive.  He asserts that the government's only involvement was the SCOP Order, which he argues is not enough to make him an instrument or agent of the state.  *See Day*, 591 F.3d at 683.  Were this true—that the SCOP Order was the only government involvement—then Tidwell's argument would have strong support in the case law.  *See id.* at 685 (reviewing a similar statutory scheme in Virginia that authorizes "armed security officers") ("This mere governmental authorization for an arrest . . . in the absence of more active participation or encouragement is insufficient to implicate the Fourth and Fifth Amendments.").

The problem with Tidwell's argument, however, is that the SCOP Order was not the only government involvement in this incident.  The Complaint alleges that Tidwell called 9-1-1 for assistance, and when he arrived at the scene of the arrest, at least two LPD officers were actively engaged with Plaintiff and attempting to arrest him.  (Dkt. 1 ¶¶ 39–40, 55–56, 60).  Tidwell then worked together with the officers to subdue and arrest Plaintiff, including deploying his taser.  (*Id.* ¶¶ 60, 63).  Furthermore, Plaintiff has alleged that after the arrest Tidwell communicated with either Clark or Bragg and sought arrest warrants at their behest.  (*Id.* ¶¶ 333–35).  This conduct—combined with the SCOP Order—appears to be precisely the kind of "active participation or encouragement" that the Fourth Circuit contemplated in *Day*.  Accordingly, the first *Day* factor is satisfied because the government either directed or acquiesced to Tidwell's conduct.

As for the second *Day* factor—whether the private individual intended to assist law enforcement—it too is satisfied in this case.  Tidwell's decision to call 9-1-1, aid two LPD

officers that were already engaged with Plaintiff, and seek arrest warrants evinces a clear intention to assist law enforcement officers in the apprehension, arrest, and prosecution of Plaintiff. Tidwell's conduct reflects that he "intended to assist law enforcement" and there is no evidence of "some other independent motivation." *Day*, 591 F.3d at 683.

Thus, Plaintiff has alleged facts sufficient to state a plausible claim that Tidwell was acting under color of state law. The allegations, taken as true, demonstrate that he was acting within the scope of his SCOP authority to assist law enforcement at the direction or acquiescence of state actors. That is, he was acting as an instrument or agent of the state under color of state law. *See Dennis v. Sparks*, 449 U.S. 24, 28 n.4 (1980) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

*2. Counts 4 & 9: Lack of Conspiracy*

Defendant Tidwell asks the Court to dismiss Counts 4 and 9—which allege conspiracy to maliciously prosecute under § 1983 and Virginia common law, respectively—because Plaintiff has failed to plead his claims of conspiracy with sufficient specificity. He argues that Plaintiff's allegations are based upon unsupported legal conclusions and conjecture, rather than factual allegations about concerted action or meeting of the minds.

Under Virginia law, "[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *The Country Vintner, Inc. v. Louis Latour, Inc.*, 272 Va. 402, 412 (2006). Likewise, a claim of conspiracy under § 1983 requires a plaintiff to "plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden v. Howard Cty., Md.*, 954 F.2d 960, 970 (4th Cir. 1992).

The Supreme Court addressed the pleading standard with regard to conspiracies—albeit under a separate statute—in *Twombly*. The Court stated that a complaint alleging a conspiracy requires "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. This requires more than "an allegation of parallel conduct and a bare assertion of conspiracy" because such conduct "could just as well be independent action." *Id.* at 556–57. However, "[a]sking for plausible ground to infer an agreement does not impose a probability requirement at the pleading stage," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 556.

Here, Plaintiff has alleged parallel conduct, which "gets the complaint close to stating a claim." *Id.* at 557. It is alleged that Defendant Tidwell sought arrest warrants for Plaintiff shortly after Defendants Bragg and Clark had been unsuccessful in obtaining warrants. (Dkt. 1 ¶¶ 333, 335). But the Complaint does not stop there. The Complaint places the conduct "in a context that raises a suggestion of a preceding agreement." *Twombly*, 550 U.S. at 557. Defendants are alleged to have cooperated in the arrest earlier that evening, after which they realized that Plaintiff's arrest may have been unlawful, which motivated them to seek warrants for Plaintiff's arrest. (Dkt. 1 ¶¶ 76–77, 331). This context demonstrates that Tidwell's decision to seek warrants may have been more than mere parallel conduct. Furthermore, Plaintiff alleges that upon information and belief, Defendant Bragg or Defendant Clark called Tidwell to discuss seeking additional warrants from the magistrate after their initial attempt failed. (*Id.* ¶ 334).

Because the Complaint contains more than "an allegation of parallel conduct and a bare assertion of conspiracy," *Twombly*, 550 U.S. at 556, Defendant's motion as to Counts 4 and 9 will be denied. Plaintiff has plead facts sufficient to state a plausible claim that there was a meeting of the minds and concerted effort by Defendants to maliciously prosecute Plaintiff.

*3. Count 10: Intentional Infliction of Emotional Distress*

Defendant Tidwell asks the Court to dismiss Count 10 against him as it fails to state a claim of intentional infliction of emotional distress. In order to state a claim for IIED, a litigant must plead: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the defendant's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Almy v. Grisham*, 273 Va. 68, 77 (2007). Because the Complaint fails to allege facts sufficient to satisfy the fourth element, the claim will be dismissed.[11]

Even assuming Plaintiff has alleged intentional or reckless conduct causally related to his emotional harm that was sufficiently outrageous and intolerable to satisfy the first three elements of IIED, Plaintiff has failed to plead emotional distress that is severe enough to satisfy the fourth element of an IIED claim. The Virginia Supreme Court has held that to state a claim for IIED, the resulting emotional distress must be "so severe that no reasonable person could be expected to endure it." *Almy*, 273 Va. at 80 (quoting *Harris v. Kreutzer*, 271 Va. 188, 205 (2006)). Here, Plaintiff provides scant details about his emotional distress. Instead, he merely lists the following symptoms: "(i) humiliation, (ii) embarrassment, (iii) anxiety, (iv) depression, (v) damage to his reputation, (vi) fear, (viii) [*sic*] panic, and (ix) [*sic*] severe mental anguish." (Dkt. 1 ¶ 594). Despite Plaintiff's description of these symptoms as "severe emotional distress," this label alone does not satisfy the high standard to establish IIED in Virginia. The symptoms described a far from being "so severe that no reasonable person could be expected to endure it." *Almy*, 273 Va. at 80; *see also id.* at 79 (describing symptoms that "ultimately caused a complete disintegration of virtually every aspect of her life" and required "extensive therapy"); *Twombly*, 550 U.S. at 555 (stating that "labels . . . conclusions, and a formulaic recitation of the elements of

---

[11]     Count 10 also alleges IIED by Defendants Bragg, Clark, and Centra. (Dkt. 1 ¶¶ 591–95). Tidwell was the only defendant to challenge Count 10, but because the same logic applies to all defendants, Count 10 will be dismissed in its entirety.

a cause of action will not do"). Because Plaintiff's claims of emotional distress are too vague and insufficiently severe to state a plausible claim for relief, Count 10 will be dismissed.

## IV. CONCLUSION

Two of the partial motions to dismiss will be granted in part and denied in part, while the motion by the City and Defendants Bragg, Clark, and Miller will be grantd. The dispositions will be as follows: (1) all Counts will be dismissed against the City, and it will be terminated from the case; (2) Counts 10, 11, and 12 will be dismissed against all defendants; (3) Counts 1, 3, and 4 will be dismissed against Defendants Miller, Bragg, and Clark because they are entitled to qualified immunity; (4) Counts 1–4 will be dismissed against Centra; (5) the punitive damages requests found in Counts 5–9 will be limited to a total of $350,000, in accordance with Virginia law; and (6) LPD John Does 1–10, LPD Jane Does 1–10, Centra John Does 1–10, and Centra Jane Does 1–10 will be dismissed and terminated from the case, pursuant to Rule 4(m), because they have not been served.

In his briefs and at oral argument, Plaintiff's counsel conceded that some of Plaintiff's claims are factually insufficient, and requested leave to amend the Complaint. Seeing as these are not appropriate mechanisms for requesting such leave, it will not be granted at this time. *See* Fed. R. Civ. P. 7(b); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). Nevertheless, if additional details are unearthed during discovery, Plaintiff retains the ability to motion the Court for leave to amend. *See* Fed. R. Civ. P. 15(a). Of course, any such request would require Plaintiff to attach a proposed amended complaint in order for the Court to determine whether leave to amend is warranted. In light of the exceptional length of the original complaint (122 pages) and the considerable number of claims that remain pending, the Court will not grant Plaintiff leave to amend unless it is certain that such an amendment is non-frivolous, non-futile, and in compliance

with Federal Rule of Civil Procedure 8.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to Plaintiff, Defendants, and all counsel of record.

Entered this __7th__ day of August, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE