IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

TERSHAUD SAVORYEA ROSE,

    *Plaintiff*,

v.

CENTRA HEALTH, INC., *et al.*,

    *Defendants*.

Case No. 6:17-cv-12

### POST-HEARING MEMORANDUM IN SUPPORT OF DEFENDANT CENTRA HEALTH, INC.'S MOTION FOR A PROTECTIVE ORDER PROHIBITING PLAINTIFF FROM ENGAGING IN *EX PARTE* COMMUNICATIONS WITH CURRENT AND FORMER CENTRA EMPLOYEES

Defendant Centra Health, Inc. ("Centra") submits this Post-Hearing Memorandum in Support of Defendant's Motion For A Protective Order Prohibiting Plaintiff From Engaging In *Ex Parte* Communications With Centra's Current and Former Employees ("Motion for Protective Order").

### INTRODUCTION

Following the hearing on Defendant's Motion for Protective Order, the Court requested additional briefing, including "whether any case law supports a request by Centra for the court to order counsel for plaintiff to take down the website at issue, located at http://centraintellegence.com/index.php, which includes fillable forms and the ability to upload files."[1] Based on the authorities cited herein, Centra requests that the website be modified[2] to: (1) prevent current and former Centra employees from disclosing Centra's confidential and/or

---
[1] Dkt. 79 at 3.
[2] Centra is not requesting that this Court at this time order the website be completely taken down; rather Centra expressly reserves the right to bring a separate action to seek relief for the defamatory and/or misleading statements included on the website.

privileged documents and information to counsel for Plaintiff; (2) prevent current Centra employees and those former Centra employees who can impute liability on Centra from communicating, *ex parte*, with counsel for Plaintiff through the website or otherwise; and (3) require counsel for Plaintiff to ensure that the factual representations on its website are accurate and not misleading.

In particular, Centra respectfully requests that the Court enter an order: (1) requiring counsel for Plaintiff to remove the "attach files" option from its website because there is no mechanism to screen and prevent the inadvertent delivery and disclosure of confidential or privileged Centra documents and information; (2) requiring an affirmative certification that an individual is not a current or former Centra employee *before* a message can be sent to counsel for Plaintiff via the website; (3) requiring counsel for Plaintiff to abide by the guidelines set by this Court in *Bryant v. Yorktowne Cabinetry, Inc.*, 538 F. Supp. 2d 948, 953-54 (W.D. Va. 2008) when communicating with former employees that can impute liability on Centra; and (4) requiring Plaintiff to distinguish between allegations and undisputed facts (using language such as "it is Plaintiff's contention that. . . " or "Plaintiff alleges . . .") and remove or modify for accuracy indisputably false and misleading representation such as "Centra maintains a private police force of security guards that patrols the public streets of Lynchburg" and "These poorly regulated and improperly supervised Centra security guards have no business patrolling the public streets."[3]

Centra believes that the case law supports the entry of such an order modifying the website and respectfully requests that such an order be entered in this case.

---

[3] http://centraintelligence.com/index.php/abuse-of-power.

**ARGUMENTS AND AUTHORITIES**

I. **THIS COURT HAS THE AUTHORITY TO ORDER CENTRA'S REQUESTED RELIEF.**

The Court has the power under Rule 26 to order the proposed modifications of the website. Rule 26(c) grants district courts broad authority to issue any "order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one . . . *forbidding the disclosure* or discovery . . . *forbidding inquiry into certain matters* . . . [and] requiring that *a trade secret or other confidential* research, development, or *commercial information not be revealed* or be revealed only in a specified way." Fed. R. Civ. Pro. 26(c). The Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984); *see also* Wright & Miller, Federal Practice and Procedure, § 2036 (3d ed. 2017) ("Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule."). Moreover, courts have an affirmative duty to enforce standards of ethical responsibility, and this duty "places additional responsibility on this court to restrain conduct which has the *potential for evolving into a breach of ethics* **before such conduct becomes ripe for disciplinary action**." *In re Investigative Grand Jury Proceedings*, 432 F. Supp. 50, 53 (W.D. Va. 1977) *aff'd,* 563 F.2d 652 (4th Cir. 1977).

Mr. Valois has acknowledged that he intends to use information gained through the website in the present suit.[4] This purpose is also apparent from website itself.[5] Accordingly, there can be

---

[4] *See, e.g.,* Dkt. 55 at 5 (asserting this statement of fact); Dkt. 57 at 1 (adopting this statement of fact).

[5] *See, e.g., http://centraintelligence.com/index.php/abuse-of-power* ("If you have any information about misconduct by Centra security guards, please REPORT (/index.php/abuse) it immediately").

no dispute that the website is a discovery tool for the pending litigation and is subject to the inherent power of the court under Rule 26 and otherwise. *See, e.g., Seattle Times Co.,* 467 U.S. at 35 ("Whether or not the Rule itself authorizes a particular protective order . . . we have no question as to the court's jurisdiction to do this under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices") (internal brackets, quotations and citations omitted); *In re Investigative Grand Jury Proceedings*, 432 F. Supp. at 53.[6]

Thus, this Court has the power and discretion to order the requested relief with respect to the website. In analogous circumstances, courts have ordered plaintiffs' counsel to modify their websites advertising and soliciting new clients for class action lawsuits under Rule 23(d). For example, in *Self v. TPUSA, Inc.*, No. 2:08cv395, 2008 U.S. Dist. LEXIS 71341, at *3-4 (D. Utah 2008), the District Court evaluated a website established by counsel for plaintiffs, www.tpclassaction.com, that provided information about the case and urged former and current employees of defendants to join the lawsuit. Defendants sought an order "requiring Plaintiffs to dismantle the tpclassaction website on the grounds that it provides misleading and inaccurate information." *Id.* at *3-4. The court agreed with defendants that the information presented on the website was misleading and inaccurate because it misrepresented allegations as facts, described "policies and practices" of defendants as if they were uncontested facts, and generally failed to identify allegations and contentions as exactly that: allegations and contentions. *Id.* at *11-13.

After finding that the website was inaccurate and misleading, the court ordered counsel for plaintiffs to change the *entire website* to accurately reflect facts versus allegations and contentions.

---

[6] Extra-judicial discovery that bears on issues relevant to litigation is discovery under Rule 26 and subject to the Court's authority thereunder. *See Riensch v. Union Pac. R.R.*, 12 F. Supp. 2d 1136, 1140 (D. Colo. 1998) (entering protective order prohibiting an employer from requiring an extra-judicial physical examination of plaintiff during the course of his continued employment because it "bears on issues relevant to [his] FELA action and could generate facts or medical opinions that could be used as evidence against [plaintiff]"; thus, "[t]he requested physical examinations… constitute discovery within the meaning of Fed. R. Civ. P. 26(b)(1) and is subject to this court's authority pursuant to Rule 26(c).")

*Id.* at *13. Specifically, the court ruled: "[i]nformation presented on the website must be factually accurate and reflect that Plaintiffs' allegations are just that: allegations. The court encourages the liberal use of words and phrases like 'allege' and 'assert' and 'Plaintiffs claim' and 'Plaintiffs believe.'" *Id.* With these changes in mind, the court concluded that shutting down the website completely would be an abuse of discretion. *Id.* at *8.

Unlike defendants in *Self*, Centra is not seeking to shut down Mr. Valois's website in the current case. Centra is merely seeking to (1) prevent current and former Centra employees from disclosing Centra's confidential and/or privileged documents and information to counsel for Plaintiff; (2) prevent current Centra employees and those former Centra employees who can impute liability on Centra from communicating, *ex parte*, with counsel for Plaintiff through the website or otherwise; and (3) require counsel for Plaintiff to ensure that representations on its website are accurate and not misleading. As discussed below, Centra has shown good cause to support entry of a protective order.

## II. CENTRA HAS DEMONSTRATED GOOD CAUSE TO SUPPORT THE REQUESTED RELIEF.

The website at issue is not a typical lawyer website that promotes a firm and its areas of practice to the general public. Rather, it is a website targeted to individuals with knowledge and information about a specific defendant in two civil cases that are being actively litigated by Mr. Valois. This is significant because the website requests documents, files, and messages from individuals in a position to know facts and information about Centra, its conduct, and its policies and procedures—including, among other things, "information about [alleged] misconduct by Centra security guards."[7] Without question, Centra's current and former employees are a core, if not primary, group of individuals that are in a position to know facts and information about and

---

[7] *See* http://centraintelligence.com/index.php/abuse-of-power; http://centraintelligence.com/index.php/abuse.

have access to Centra documents that bear on the litigation and allegations relating to the conduct of security guards.

While the website espouses an "intent" not to solicit represented persons or current Centra employees and an "intent" not to solicit confidential information or trade secrets, there is no mention of attorney-client or work-product privilege information, absolutely no guard against receipt of privileged and confidential information from former Centra employees and no mechanism to effectively screen and prevent delivery of confidential and/or privileged information from current and former employees. Instead, the website leaves it to *lay* users to determine what is or is not legally privileged, what is or is not Centra confidential information, and whether or not contact is permissible in light of the "intent" of the website. Therein lies the problem.

### A. GOOD CAUSE SUPPORTS REMOVAL OF THE "ATTACH FILES" OPTION ON THE WEBSITE

Good cause supports the removal of the "attach files" option on the website. Both the spirit and the letter of "ethical norms preclude an attorney from acquiring, inadvertently or otherwise, confidential or privileged information." *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 718 (D. Conn. 1991); *see also* Va. Sup. Ct. R. pt. 6, § II, R. 4.4 (A lawyer shall not "use methods of obtaining evidence that violate the legal rights of [others]"); Rule 4.2 at cmt. 3 (The prohibition on communicating with a represented person contains no exception for communications initiated by the represented person); Rule 1.6 (The duty not to reveal client confidences includes a corollary duty not to seek those confidences from another); *cf.* Rule 8.4.

In addition to legally privileged information, Mr. Valois has a duty not to acquire, inadvertently or otherwise, confidential business information from current or former employees without Centra's authorization. Both current and former employees owe a continuing fiduciary duty to their employer not to disclose the employer's confidential information. *See, e.g., Zurich*

*Am. Ins. Co. v. Turbyfill*, Case No. 7:10cv282, 2010 U.S. Dist. LEXIS 110056, at *13 (W.D. Va. 2010) ("[T]he prohibition against using confidential employer information continues to apply even after the conclusion of the employment relationship.") (internal citation omitted); *Today Homes, Inc. v. Williams*, 272 Va. 462, 474, 634 S.E.2d 737, 744 (2006) ("Resignation or termination does not automatically free a director or employee from his or her fiduciary obligations.") (internal citation omitted). Further, pursuant to Rule 4.4, Mr. Valois must respect that duty and "shall not …. use methods of obtaining evidence that violate the legal rights of [Centra]." As noted above, this Court has an affirmative duty to "restrain conduct which has the potential for evolving into a breach of ethics before such conduct becomes ripe for disciplinary action." *In re Investigative Grand Jury Proceedings*, 432 F. Supp. 50, 53 (W.D. Va. 1977) *aff'd,* 563 F.2d 652 (4th Cir. 1977).

The problem with the website (in addition to the inaccuracies and misrepresentations) is that Mr. Valois is the shifting the onus of determining whether a communication is proper and permissible to individuals that lack any legal background or training, and inviting them to upload documents that relate to the conduct of security guards and other Centra personnel. This is not a situation where an individual initiates a call to Mr. Valois, and Mr. Valois (or another attorney in his office) has the opportunity to assess, screen and stop impermissible *ex parte* communications and prevent disclosure of privileged or confidential information before such information is delivered.

Numerous courts have recognized that "it is unrealistic to expect even the best-intentioned lay person to be able to safeguard the attorney-client privilege." *G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 535 (S.D.N.Y. 2001) ("[F]ormer employees who possess knowledge regarding privileged communications . . . present a 'distinct problem' where *ex parte* interviews are concerned. One aspect of this problem is that, where the former employee is a lay person, it is

unrealistic to think that he will know what information or communications are privileged, so that even where disclosure of such matters is not intended it may well occur inadvertently.")); *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414 (D. Md. 1986) ("unlike lawyers, who can protect the attorney-client privilege, [lay employees] have no legal training and cannot be expected to make sophisticated judgments regarding the scope of the privilege"); *MMR/Wallace Power & Indus., Inc.*, 764 F. Supp. 712, 726 (D. Conn. 1991) (counsel's assertion that no privileged information was shared "rings hollow . . . in light of [the former employee's admissions] that, as a lay person, he did not know what information or communications were protected by the attorney-client privilege.").

This concern applies equally to confidential business records and information in the possession of current and former employees and to statements about policies and practices that could bind Centra. *See Dixon-Gales v. Brooklyn Hosp. Ctr.*, 2012 NY Slip Op 22063, ¶ 4, 35 Misc. 3d 676, 682, 941 N.Y.S.2d 468, 473 (Sup. Ct.) ("[S]tatements from [a low level nurse] regarding an alleged failure to follow protocol may bind the hospital. Here, *the former and present employees*, including Nurse Ambrose, are witnesses not only of the facts *but also to the policy and procedures the hospital had in place at the time the incident.*") (emphasis added). Lay individuals simply lack the knowledge and training to assiduously guard against improper disclosures, including disclosure of privilege and confidential business records and information. Removing the "attach files" option from the website is a very narrow remedy that will avoid improper disclosure of Centra's confidential and privileged information by lay persons without an attorney gate-keeper involved.

### B. GOOD CAUSE SUPPORTS PROTECTIONS AGAINST IMPROPER *EX PARTE* COMMUNICATIONS WITH CURRENT & FORMER EMPLOYEES VIA THE WEBSITE OR OTHERWISE

Good cause likewise supports requiring an affirmative certification that an individual is not a current or former Centra employee *before* a message can be sent to counsel for Plaintiff via the website. As noted above, former employees, like current employees, owe continuing fiduciary duties to Centra and can possess privileged information and confidential business information that they are duty bound not to disclose. *See, e.g., Zurich*, 2010 U.S. Dist. LEXIS 110056 at *13. The message option on the website, like the attach files option, enables improper disclosure of this information without an attorney serving a gate-keeping function.

Further, pursuant to Rule 4.2, Mr. Valois cannot communicate *ex parte* with represented individuals, including employees within the scope of the Rule, and Mr. Valois must tread very carefully when communicating with former employees. *See Bryant v. Yorktowne Cabinetry, Inc.*, 538 F. Supp. 2d 948, 953-54 (W.D. Va. 2008). The website, however, does not guard against these communications and does allow for an attorney gate-keeper to avoid improper subjects and disclosures.

*Hammond v. Junction City*, 167 F. Supp. 2d 1271, 1274 (D. Kan. 2001) provides an instructive cautionary tale. In *Hammond*, a managerial employee of defendant initiated contact with plaintiff's counsel to express the desire to have plaintiff's counsel represent him in an employment discrimination class action case. Plaintiff's counsel engaged in *ex parte* communications about the pending litigation and then formed an attorney-client relationship with the managerial employee. On defendant's motion for protective order, the court disqualified plaintiff's counsel and their firm for improper *ex parte* communications, and held that "no exception to Rule 4.2 should apply based on any attorney-client relationship formed as a result of [the employee's] apparent desire to be individually represented by Plaintiff's counsel [because] . .

. that relationship was only created *as a result of the improper ex parte communications*." *Hammond* 167 F. Supp. 2d at 1284, 1289 (emphasis added). The court further held that no exception to Rule 4.2 applies as a result of the employee initiating contact. *Id.* In reaching its conclusion, the court stated:

> Although Plaintiff Marcus Hammond, Sr., has a strong interest in being represented by his present counsel, ***Defendants have an even stronger interest in preventing managerial employees . . . from divulging attorney-client privileged information to adverse counsel and in preventing adverse counsel from obtaining potentially damaging statements from such employees***. While this Court will take other actions to lessen the prejudicial effect and the taint to the lawsuit that the ex parte communications have created … *the Court can conceive of no less onerous alternative than disqualification* to fully remedy the situation.

*Id.* (emphasis added).

Like defendant in *Hammond*, Centra has a strong interest in preventing improper disclosure of privileged information and preventing adverse counsel from obtaining potentially damaging statements from employees that have the authority to bind Centra. Centra likewise has a strong interest in protecting its confidential information from improper disclosure. Requiring individuals to affirmatively certify that they are not current or former employees *before* submitting a message via the website, and requiring Mr. Valois to otherwise abide by the guidelines in *Bryant* when communicating with former employees that cannot bind Centra are narrowly tailored methods of preventing improper communication and disclosure.

*{2238276-1, 106642-00076-01}* 10
Case 6:17-cv-00012-NKM-RSB   Document 82   Filed 08/28/17   Page 10 of 16   Pageid#: 915

## C. GOOD CAUSE SUPPORTS CHANGES TO ENSURE REPRESENTATIONS ON THE WEBSITE ARE ACCURATE AND NOT MISLEADING

Good cause supports requiring Plaintiff to distinguish between allegations and undisputed facts (using language such as "it is Plaintiff's contention that . . ." or "Plaintiff alleges. . .") and requiring counsel to modify for accuracy indisputably false and misleading representation.

As it currently stands, the website makes broad sweeping characterizations of Plaintiff's allegations and misrepresents Plaintiff's contentions as undisputed facts. For example, Plaintiff asserts that "Centra security guards deployed weapons without justification." *See* http://centraintelligence.com/index.php/abuse-of-power. That, of course, is a hotly disputed allegation. The website also contains indisputably false and misleading representation such as "Centra maintains a private police force of security guards that patrols the public streets of Lynchburg" and "[t]hese poorly regulated and improperly supervised Centra security guards have no business patrolling the public streets." [8]

Inaccurate and misleading statements have no place in attorney advertising. *See* Va. Sup. Ct. R. pt. 6, § II, R. 7.1(a); *Self*, 2008 U.S. Dist. LEXIS 71341 at *3-4. "[C]ourts have required modification of statements [in advertising] presented as conclusions rather than as the plaintiffs' contentions." *Self* at **9, 11-13 (agreeing information presented on plaintiffs' counsel's website was misleading and inaccurate because it misrepresented allegations as undisputed facts and described "policies and practices" of defendants as if they were uncontested facts). In *Self* the court ordered plaintiff to "mak[e] changes to the entire website," stating: "Information presented on the website must be factually accurate and reflect that Plaintiffs' allegations are just that: allegations. The court encourages the liberal use of words and phrases like 'allege' and 'assert' and 'Plaintiffs claim' and 'Plaintiffs believe.'" *Id.* at *13. The court in *Self* left it to plaintiffs'

---

[8] http://centraintelligence.com/index.php/abuse-of-power.

counsel to identify and correct the representations, and allowed defendant the opportunity to seek court intervention to resolve disputes about the accuracy of counsel's representations after it had an opportunity to modify the representations. Centra requests the same relief.

### III. THE FIRST AMENDMENT DOES NOT LIMIT THIS COURT'S POWER TO GRANT THE RELIEF SOUGHT.

The First Amendment does not limit the Court's power to order the requested relief. As an initial matter, inaccurate and misleading statements in commercial advertising, like those in Mr. Valois's website, are not protected by the First Amendment. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980) ("At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading."); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake. Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no obstacle to a State's dealing effectively with this problem. The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely.") (internal citations omitted).

Moreover, removing the "attach files" and restricting messaging functionality to individuals who are not current or former employees is permissible for several reasons. First, "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S. Ct. 1271, 1281 (1965). Mr. Valois is not being denied the opportunity to gather information to which he is lawfully entitled. In addition to formal discovery, individuals can still call Mr. Valois, and assuming that he is not violating any legal or ethical rules by doing so, he is free to speak with them *ex parte* and serve an attorney gate-keeper function to

ensure that he does not receive impermissible information (such as privileged or confidential documents or information).

Second, the prior restraint doctrine is not applicable to commercial speech, and therefore, does not prevent the Court from limiting the functionality of the website or granting other relief. *Cent. Hudson,* 447 U.S. at 605, n.13 ("We have observed that commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it."); *Virginia Pharmacy Board,* 425 U.S. at 771, n.24 ("The greater objectivity and hardiness of commercial speech [] may make it less necessary to tolerate inaccurate statements for fear of silencing the speaker . . . They may also make inapplicable the prohibition against prior restraints."); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court,* 471 U.S. 626, 668, n.13 (1985) ("'The Court previously has noted that, because traditional prior restraint principles do not fully apply to commercial speech, a State may require a system of previewing advertising campaigns to ensure that they will not defeat state restrictions.'") (quoting *Central Hudson,* 447 U.S. at 571, n. 13.).

Finally, even if intermediate First Amendment scrutiny is appropriate, the government interest in preventing the unauthorized and unlawful disclosure of privileged and confidential information to an adversary in litigation is substantial and more than sufficient to justify the narrow relief sought herein. *See, e.g., Central Hudson,* 447 U.S. at 566; *Self*, 2008 U.S. Dist. LEXIS 71341, at *8 (As it relates to ongoing litigation, an order limiting communications "will satisfy first amendment concerns if it is grounded in good cause and issued with a heightened sensitivity for first amendment concerns.") (quoting *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1205 (11th Cir. 1985).

## CONCLUSION

For the reasons stated above and in its brief in support and reply in support of the Motion, Centra respectfully requests that this Court grant the Motion, Docket Entry 54, and enter an order:

(1) requiring counsel for Plaintiff to remove the "attach files" option from its website;

(2) requiring an affirmative certification that an individual is not a current or former Centra employee *before* a message can be sent to counsel for Plaintiff via the website;

(3) requiring counsel for Plaintiff to abide by the guidelines set by this Court in *Bryant v. Yorktowne Cabinetry, Inc.*, 538 F. Supp. 2d 948, 953-54 (W.D. Va. 2008) when communicating with former employees that cannot impute liability on Centra; and

(4) requiring Plaintiff to distinguish between allegations and undisputed facts (using language such as "it is Plaintiff's contention that…" or "Plaintiff alleges…") and to remove or modify for accuracy indisputably false and misleading representation such as "Centra maintains a private police force of security guards that patrols the public streets of Lynchburg" and "These poorly regulated and improperly supervised Centra security guards have no business patrolling the public streets."

Respectfully,

CENTRA HEALTH, INC.
By:  /s/F. Elizabeth Burgin Waller
       Of Counsel

Elizabeth Guilbert Perrow (VSB No. 42820)
F. Elizabeth Burgin Waller (VSB No. 74726)
Justin E. Simmons (VSB No. 77319)
J. Walton Milam III (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA  24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
bwaller@woodsrogers.com

jsimmons@woodsrogers.com
wmilam@woodsrogers.com
*Counsel for Defendant Centra Health, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2017, I caused the foregoing document to be filed electronically using the CM/ECF system, which will send notification of the filing all counsel of record.

/s/F. Elizabeth Burgin Waller